Teresa V. Manning

*v.*

Margaret A. Riley.

52   39
60  288.

1. As against a voluntary settlement the law raises, in respect to existing debts, a conclusive presumption of fraud.

2. By the statute of frauds, a promise made in consideration of marriage is not binding unless it be in writing and signed by the party to be charged therewith.

3. A post-nuptial settlement, made in pursuance of an ante-nuptial parol promise, and followed by nothing on the part of the wife but marriage, is voluntary.

4. Marriage is not such a part peformance, on the part of the wife, of an ante-nuptial parol contract as will take the contract out of the statute of frauds and make it the legal duty of the husband to make a post-nuptial settlement in conformity to his ante-nuptial parol promise.

5. If a man make a promise to another person, for the purpose of inducing

that person to do an act, other than to marry him, and the act is done on the faith of such promise, the promisor will be held to his word and be compelled to do what he promised.

On final hearing on bill and answer and proofs taken orally.

*Mr. John O. H. Pitney* for complainant.

*Mr. Edward A. Day* for defendant.

VAN FLEET, V. C.

The complainant is a judgment creditor of John M. Riley, and she brings this suit to procure a decree adjudging that a settlement made by her judgment debtor on his wife, the defendant in this case, is without force as against her judgment, because it was made by way of gift and without consideration. The defendant, on the contrary, insists that the settlement rests on a consideration sufficient to make it valid against the complainant's judgment.

The facts are not in dispute. The defendant and John M. Riley intermarried on the 15th day of August, 1878. She was a widow and he was a widower. The defendant says just prior to their marriage Mr. Riley promised that if she would marry him he would give her his homestead house and lot. When required to state more in detail the circumstances under which the promise was made, she said that she did not object to marrying Mr. Riley, but she did object to going to his home to live, because some of his children and grandchildren were living with him, and that she told him so, and then proposed that, after their marriage, he should come to her house and make that his home; to this, she says, he replied that he was very much attached to his garden and did not want to leave it, and that if she would consent to marry him and go to his house to live, all of his children, except one son and a grandchild, should leave and go elsewhere, and he would also give her his homestead house and lot for herself. This promise, though made prior to the 15th day of August, 1878, was not performed until February 14th, 1888. Mr. Riley then, through a third person, conveyed

his homestead, for a nominal consideration, to the defendant. The reason her husband did not fulfill his promise earlier, the defendant says, was because she told him that a conveyance to her might create an enmity between his sons and himself, and perhaps also between them and her, and that his word was all she wanted. The debt on which the complainant's judgment is founded arose in January, 1883, more than five years before the settlement in controversy was made.

The above summary exhibits all the material facts of the case. No evidence, in proof of the ante-nuptial contract on which the defence rests, was produced except that of the defendant herself, and the truth of her evidence, on that point, stands entirely uncorroborated. Not a single fact or circumstance was proved by the oath of any other witness, or in any other way, which goes to substantiate or confirm the truth of her evidence on that point. With the evidence in this condition, I think it may well be doubted whether the evidence is sufficient to warrant a judicial finding that the contract alleged was in fact made, but in order to determine the question mainly discussed by counsel on the argument, it will, for present purposes, be assumed that the contract on which the defence rests has been proved as alleged, and that the promise of the husband to make a conveyance was made to induce the defendant to consent to marry him, and not to induce her to consent to go to his house to live after their marriage.

If the settlement in question was voluntary, the complainant's right to have it set aside as fraudulent, as against her debt, is, under the established law of this state, incontestable. The rule on this subject laid down by Chancellor Kent, in *Reade* v. *Livingston, 3 Johns. Ch. 481, 500,* has been for so long a period, and in so many instances, adopted by the courts of this state as the rule of judgment in such cases, that it must be considered so completely and thoroughly settled that any attempt by counsel to induce this court to change or overthrow it should be regarded rather as an exhibition of rash courage than as a display of discretion. And that rule is : " That if the party be indebted at the time of the voluntary settlement, it is presumed to be fraudu-

lent in respect to such debts, and no circumstances will permit those debts to be affected by the settlement, or repel the legal presumption of fraud. The presumption of law, in this case, does not depend upon the amount of the debts, or the extent of the property in settlement, or the circumstances of the party. There is no such distinction set up or traced in any of the cases. The attempt would be embarrassing, if not dangerous, to the rights of creditors, and prove an inlet to fraud. The law has, therefore, wisely disabled the debtor from making any voluntary settlement of his estate to stand in the way of his existing debts." Out of the multitude of cases in which the courts of this state have enforced this rule, two only will be cited—*Haston* v. *Castner, 4 Stew. Eq. 697, 704; Hagerman* v. *Buchanan, 18 Stew. Eq. 292, 296.*

The question, then, upon which the decision of this case must turn is, Was the settlement voluntary? It is admitted that it was founded upon an ante-nuptial parol promise, and that it has the support of no other consideration. Prior to the enactment of the statute of frauds such a promise was held to be a sufficient consideration to support a post-nuptial settlement. The reasoning was this : the marriage having been procured by means of the promise to make a settlement, and the promisor having received the consideration for his promise, thereby became bound, according to the ordinary principles of justice, to keep his word and perform his promise. *May Fraud. Conv. 370.* But this rule was abrogated by the statute of frauds. That statute, in substance, ordains that no action shall be brought to charge any person upon any agreement made upon consideration of marriage, unless the agreement upon which such action shall be brought shall be in writing and signed by the party to be charged therewith. *Rev. p. 445 § 5.* This provision of our statute is almost a literal transcript of the original statute of Charles II. The purpose of the statute is plain. It was designed to render hasty and inconsiderate oral promises, made to induce marriage, without legal force, and thus to give protection against the consequences of rashness and folly. Lord Cranworth, in *Warden* v. *Jones, 2 De G. & J. 76, 82,* described the object of the statute

and the duty of the courts in maintaining it, in these words: "Persons are so likely to be led into such promises inconsiderately, that the law has wisely required them to be manifested by writing; and it is the duty of this court to act in conformity with the statute, and not to endeavor to escape from its generally very salutary enactments in consequence of its operating harshly in a particular case."

Now if an ante-nuptial parol promise to make a settlement cannot be made the foundation of an action—and that is the express mandate of the statute—it follows necessarily that such a promise imposes no legal duty on the promisor; by making it, no legal duty is imposed or obligation incurred, and its breach consequently creates no legal liability. Its performance therefore is an act of pure grace—the doing of a favor and not the doing of a duty—and so is voluntary in the strongest sense of that term. But it has been said that while such a promise imposes no legal duty, it creates a moral obligation, and that such an obligation should be held to be a sufficient consideration for a post-nuptial settlement and free it from the imputation of fraud even as against creditors. The answer, however, made by Lord Northington, in *Spurgeon* v. *Collier, 1 Eden 55, 61*, and adopted by Lord Cranworth, in *Warden* v. *Jones, supra,* to this argument, must, I think, be considered conclusive. Lord Northington said: "If such a parol agreement were to be allowed to give effect to the subsequent settlement, it would be the most dangerous breach of the statute and a violent blow to credit, for any man, on the marriage of a relation, might make such promise of which an execution never could be compelled against the promisor, and the moment his circumstances failed he would execute a settlement, pursuant to his promise, and defraud all his creditors."

The defendant has performed her part of the ante-nuptial contract. She married the man who promised to make a settlement on her. There are cases where parol contracts, within the statute of frauds, may be taken out of its operation by part performance, and thus made enforceable in equity. The special ground upon which relief is given in this class of cases is that

the statute being designed to prevent fraud, justice should not permit it to be used as an instrument of fraud or as a shield by the fraud-doer.   But marriage, standing alone, has never been regarded as a sufficient part performance of an ante-nuptial parol contract to withdraw the contract from the operation of the statute.   This was so decided as early as 1720, in *Montacute* v. *Maxwell, 1 P. Wms. 618, 620.* The rights of creditors were not involved in this case.   The bill was filed by a wife to compel her husband to make a settlement in conformity to his ante-nuptial parol promise.   On the hearing, the principal argument urged in behalf of the wife was that she, by marrying the defendant, had fully performed her part of the contract, and that the contract was thereby taken out of the statute and thus became enforceable in equity, but the court held that the wife was not entitled to a decree, declaring that where there is no fraud, only relying upon the honor, word or promise of the defendant, the statute making those promises void, equity will not interfere.   The principle laid down in this case has been uniformly adhered to by the English courts.   Lord Cottenham, in *Lassence* v. *Tierney, 1 Macn. & G. 551, 571,* in commenting on what he had said in *Hammersley* v. *De Biel,* reported in a note to *12 Cl. & F. 61,* said : "A parol contract followed only by marriage is not to be carried into effect, marriage being no part performance of the contract.   If it were there would be an end of the statute, which says that a contract, in consideration of marriage, shall not be binding unless it be in writing ; but if marriage be part performance, every parol contract followed by marriage would be binding."   And Sir John Romilly, master of the rolls, in *Warden* v. *Jones, 23 Beav. 487, 490,* held that where a man enters into a parol contract with his intended wife and nothing follows but the marriage, the marriage cannot be treated as part performance, and that the carrying into effect the parol contract after marriage, by a deed, amounts to no more than a voluntary settlement.   The same principle has controlled the decision of other cases.   *Redding* v. *Wilkes, 3 Bro. C. C. 400; Dundas* v. *Dutens, 1 Ves. Jr. 196, 199; Caton* v. *Caton, L. R. 1 Ch. App. Cas. 137.*

---

Manning *v.* Riley.

---

In Story's commentaries on *Equity Jurisprudence* (*vol. 1* § *768*), it is said :

"If there has been no fraud, and no agreement to reduce the settlement to writing, but the other party has placed reliance solely upon the honor, word or promise of the husband, no relief will be granted, for, in such a case, the party chooses to rest upon the parol agreement and must take the consequences. And the subsequent marriage is not deemed a part performance, taking the case out of the statute, contrary to the rule which prevails in other cases of contract. In this respect it is always treated as a peculiar case standing on its own grounds."

That marriage alone and of itself is not such a part performance of a parol ante-nuptial contract as will withdraw the contract from the operation of the statute of frauds and render it enforceable in equity, must, I think, be considered the settled law both of this country and England. Many of the cases so adjudging will be found cited in *May Fraud. Conv. 373, Fry Spec. Perf. 263 § 408,* and *Waterm. Spec. Perf. 390 § 288.*

But it is argued that an entirely different doctrine was established by this court in *Satterthwaite* v. *Emley, 3 Gr. Ch. 489,* the contention being that Governor Haines, sitting as chancellor, decided in that case that a marriage contracted by a woman, under an ante-nuptial parol promise to make a settlement on her, constituted a sufficient consideration to give validity to a post-nuptial settlement made in pursuance of such promise. I do not think the case can be understood to declare any such doctrine. The bill in that case was filed to procure a decree giving effect, in favor of the wife and against the creditors of her husband, to an ante-nuptial parol contract by the husband to make a settlement. The wife failed to prove the contract on which her suit was founded, and the court so found. With that finding the case ended. The court, with the case in this condition, was not required to consider what effect, if any, could be given to the contract. That question could not arise until the contract was first established by proof. Nor do I understand that any opinion, uttered as a deliberate judgment, was expressed upon that question. The most that the chancellor did was to intimate the inclination of his mind. He said that if the contract alleged

had been proved he should have been inclined to hold that a settlement made in pursuance of it was valid. " Such settlement," to speak in his own words, " could not be considered voluntary, but upon a good and valuable consideration, to wit, the marriage and *the conveyance of all the wife's estate.*" Subsequently to the marriage, it appeared that the wife had conveyed all her lands, through a third person, to her husband, in order, as it was alleged, that they might be conveyed to a trustee in fulfillment of the ante-nuptial parol contract. If the lands of the wife were conveyed to her husband, upon his promise to convey them to a third person in settlement upon her, there can be no doubt that his promise bound him in equity ; nor that the wife's conveyance would, in that case, have constituted a perfect consideration for a settlement upon her, provided it had been made promptly, and before her husband had made use of the ownership of the lands as a means of obtaining credit, for in that case it will be observed that the wife would have done something more than marry, namely, have conveyed her lands. In this situation of affairs the duty of the court would be plain. It would be bound to enforce that rule of equity jurisprudence which declares that, if a man make a promise to another person, for the purpose of inducing that person to do an act, and the act is done on the faith of such promise, the promisor will be held to his word and be compelled to do what he promised. *Warden* v. *Jones, 23 Beav. 487, 493 ; Hammersley* v. *De Biel, 12 Cl. & F. 62.*

It is thus made plain, as I think, that the judgment of the court, in *Satterthwaite* v. *Emley,* does not give the slightest countenance to the notion that marriage alone and of itself is a sufficient consideration to give validity, as against creditors, to a post-nuptial settlement made in pursuance of an ante-nuptial parol promise. And yet that is the only consideration on which the settlement in this case rests. The conduct of the settler was, as against his wife, entirely free from fraud or wrong of any kind. He would have fulfilled his promise at a time when he could have made a voluntary settlement which would have been perfectly valid against the complainant's debt, if the defendant

had not persuaded him not to do so. Her conduct, as she describes it, was so unselfish and confiding as to be worthy to be called magnanimous. To prevent her husband's children from losing confidence in his love, and to preserve their affectionate relations, she persuaded him, after the marriage, not to settle his homestead on her then, assuring him that his word was all she wanted. She put her trust in what, under the law, is without the least legal force. This may be the proper subject of regret, but it can have no influence whatever on the judgment of the court. The demands of justice are superior to the claims of affection or benevolence. The law requires a debtor to be just before he is generous—to pay his debts before he attempts to dispose of his property by gift. The deeds in question were executed in fraud of the complainant's rights, and must be set aside.