ADAMS v. SWIFT et al.   (No. 7810.)

(Supreme Court, Appellate Division, First Department.   November 19, 1915.)

1. WILLS ⊜⟿58—CONTRACT TO MAKE—VALIDITY.
   A person may bind himself by contract to leave his property in a particular way, and such contract, if validly made upon sufficient consideration, will be enforced in equity.
   [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 164, 165; Dec. Dig. ⊜⟿58.]

2. WILLS ⊜⟿309—CONTRACT TO MAKE—ENFORCEMENT—JURISDICTION OF SURROGATE'S COURT.
   Upon an application to probate a will, the Surrogate's Court has no jurisdiction to try the question of the making and effect of an antenuptial agreement by the testator to leave property to his prospective wife, or to enforce its provisions, since the Surrogate's Court is of limited jurisdiction and has no general equity powers.
   [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 735–737; Dec. Dig. ⊜⟿309.]

3. WILLS ⊜⟿311—CONTRACT TO MAKE—ENFORCEMENT—JURISDICTION OF SUPREME COURT—STATUTE.
   Code Civ. Proc. § 1861, provides that an action to establish a will may be maintained by any person interested therein in two cases. Such an action was brought in the Supreme Court, plaintiff claiming that the will was the performance by her husband of an antenuptial agreement whereby he was to leave all his property, with the exception of $1,000, to her. *Held*, that in the action the Supreme Court had jurisdiction to try the question of the making and effect of the antenuptial agreement and to enforce its provisions, since it is the court of general equity jurisdiction, and the court to which application would have to be made to enforce plaintiff's claim, separately from a proceeding under section 1861.
   [Ed. Note.—For other cases, see Wills, Cent. Dig. § 738; Dec. Dig. ⊜⟿311.]

4. FRAUDS, STATUTE OF ⊜⟿129—AGREEMENT MADE IN CONSIDERATION OF MARRIAGE—EXECUTION BY MARRIAGE.
   Where a prospective husband made an antenuptial agreement orally with his prospective wife, whereby he agreed to leave her all his property with the exception of $1,000, in consideration of the marriage, the subsequent marriage alone was not a sufficient execution of the contract to take it out of the statute of frauds.
   [Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 287–292, 303, 306–308, 310–312, 314, 318–320, 322, 323, 325, 326; Dec. Dig. ⊜⟿129.]

5. FRAUDS, STATUTE OF ⊜⟿104—AGREEMENT MADE IN CONSIDERATION OF MARRIAGE—REDUCTION TO WRITING—EFFECT.
   Where a husband's oral antenuptial agreement to leave all his property to his wife, with the exception of $1,000, was reduced to writing after the marriage, with no other consideration than the marriage to support it, such reduction was not a sufficient execution of the contract to avoid the bar of the statute of frauds.
   [Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. § 209; Dec. Dig. ⊜⟿104.]

6. FRAUDS, STATUTE OF ⊜⟿129—AGREEMENT IN CONSIDERATION OF MARRIAGE—EXECUTION.
   Where a husband, in fulfillment of his oral antenuptial agreement to leave all his property to his wife, with the exception of $1,000, executed

⊜⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

a will to that effect, the wife having married him in consideration of such promise, such execution of the will and the marriage was a sufficient execution of the antenuptial agreement to avoid the bar of the statute of frauds, so that the husband was without power to dispose of his property otherwise by subsequent testament.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 287–292, 303, 306–308, 310–312, 314, 318–320, 322, 323, 325, 326; Dec. Dig. ⊜⟶129.]

McLaughlin, J., dissenting.

Appeal from Special Term, New York County.

Action to probate a will by Lulu F. Adams against Edith Hoyt Swift, impleaded with others. From a judgment establishing the will, and restraining the probate of a later will, the named defendant appeals. Affirmed.

See, also, 165 App. Div. 905, 149 N. Y. Supp. 1068.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, SCOTT, and DOWLING, JJ.

Frost & Nieman, of New York City, for appellant.
George C. Lay, of New York City, for respondent.

SCOTT, J. This is an action to probate a will under the provisions of section 1861, Code of Civil Procedure, which provides that an action to procure a judgment establishing a will may be maintained by any person interested in the establishment thereof:

"Where a will of real or personal property, or both, has been executed in such a manner and under such circumstances that it might, under the laws of the state, be admitted to probate in a Surrogate's Court, but the original will is in another state or country, under such circumstances that it cannot be obtained for that purpose, or has been lost or destroyed, by accident or design, before it was duly proved and recorded within the state."

The will sought to be established is that of Albert A. Adams, a resident of this state, who died at Phœnix, Ariz., on November 24, 1913, in which will the plaintiff, his wife, is named as general legatee. The original will cannot be produced, because it is now on file in the superior court of Maricopa county, Ariz., whence under the laws of Arizona it cannot be removed. The defendants are the beneficiaries under a later will, and the question involved is as to the validity of the later will. That question is purely one of law, there being no dispute as to any of the material facts.

At the time of the making of the will now sought to be proved Albert A. Adams was a resident of the state of New York, engaged as a traveling auditor by the Standard Oil Company. He was about 60 years of age and in poor health. He had no immediate family, his nearest relative being a sister. On October 27, 1909, he married the plaintiff, then about 30 years of age, who had been a school-teacher. Four days later he executed the will now sought to be probated, by which he gave all of his estate to plaintiff, except a legacy of $1,000 given to a Miss Clarke. It appears, from the undisputed and unimpeached evidence of a wholly disinterested witness as to statements made by Adams to the wit-

ness, that this will was made pursuant to an antenuptial agreement between Adams and the plaintiff that if she would marry him he would make a will in her favor and leave all he had to her at his death. This witness was one Charles O. Scholder, the special agent of the Standard Oil Company at Memphis, who had known Adams for several years, but had had no acquaintance with plaintiff until the time of the marriage. He testified that Adams came into his room, shortly before the date of the marriage, and stated that he had met plaintiff in Denver, and had made a proposition of marriage to her, and that he wanted to open up this proposition to the witness, so that he should know all about the circumstances. The witness then proceeded:

"At which time he [Adams] stated that he had agreed to give Miss Fowkes [the present plaintiff] all that he had at the time of his death, by will, and that his reason for doing this was that he was not in good health, he was lonesome traveling around, and that he thought that possibly by having somebody with him, a helpmate, it would give him company and be able to look after him, and thereby get some of his worries down, which no doubt had some effect upon his health in late years."

He testified that on a later occasion Adams had reiterated his statement as to the agreement between plaintiff and himself, and that he was particular to have Mr. Scholder know all the circumstances, "so that, if at any time it became necessary, he wanted a witness both to the marriage and the agreement." After the marriage, when Adams requested Scholder to be a witness to his will, he said:

"This is in fulfillment of my agreement with Mrs. Adams in which I agreed to will her—to give her all that I had by will, except $1,000."

The will that was then executed and is now sought to be probated did give plaintiff all of Adams' property except $1,000. So we have as established facts of the case a prenuptial agreement that if plaintiff would marry testator he would make a will by which he should leave her, and she would receive at his death, all of his property except $1,000; a fulfillment of the agreement by plaintiff on her part by entering into the marriage; and a fulfillment of the agreement by Adams on his part by the making of such a will as he had agreed to make. About two years later, on August 12, 1911, Adams executed another will, in which he recited that he had given his wife three-fourths of his property, and then gave what he had left to the appellant, Edith Hoyt Smith, his niece, upon trust for her mother for life, with reversion to herself.

There is no question as to the factum of either will, or as to the valid execution of either under the laws of this state, nor is there any suggestion of undue influence, lack of testamentary capacity, or any of the other objections usually to be found in will contests. The earlier will, as has been said, cannot be produced, and cannot therefore be admitted to probate in the Surrogate's Court. The later will has been offered for probate in this county, but has not yet been admitted; its probate having been stayed by a temporary injunction in this action, and being permanently enjoined by the judgment appealed from.

The plaintiff's claim is that the antenuptial contract by Adams to give all of his property to his wife at his death, by the execution of a will to that effect, having been fully executed by the marriage and the subse-

quent making of the will, became a valid, binding, and executed contract; that the first will was irrevocable; and that any subsequent will was invalid for lack of power in the testator to execute it.

[1-3] The appellant makes several objections to the judgment which deserve consideration. She does not question the well-established rule that it is possible for a person to bind himself, by contract, to leave his property in a particular way, and that, if such a contract be validly made upon sufficient consideration, it will be enforced in equity. She objects, however, that it cannot be enforced in this action. Her argument is that whatever claim plaintiff may have to all of the testator's estate must rest upon her contract with him, and not upon the will made in fulfillment of it; that the action in this court for the probate of the first will is merely substitutional for the ordinary probate proceedings in the Surrogate's Court; and that, but for the circumstance that the first will cannot be produced, application for its probate would have to be made to the Surrogate's Court, in which case that court would be obliged to refuse probate to the earlier will in favor of the later properly executed will, leaving plaintiff to sue the executors of that will in equity.

It is quite true that upon an application for probate the Surrogate's Court would have no jurisdiction to try out the question of the making and effect of the antenuptial agreement, or to enforce its provisions. This is because the Surrogate's Court is of limited jurisdiction and has no general equity powers. With the Supreme Court it is different. It has general equity jurisdiction, and is the court to which application would necessarily be made to enforce plaintiff's claim. Section 1861 of the Code of Civil Procedure, while it extends the jurisdiction of the Supreme Court to the probating, under certain conditions, of wills, does not purport to restrict, nor, in our opinion, does it operate to restrict, the general jurisdiction of the court, which still remains a court of general equity jurisdiction. It would result in great and quite unnecessary circuity of action to drive plaintiff to two applications to the Supreme Court for the relief which can perfectly well be afforded in one; all the necessary parties being before the court, and all the essential facts provable before it. As was said by Gray, J., in Edson v. Parsons, 155 N. Y. 555, 50 N. E. 265:

"The law permits a person to dispose of his property at his pleasure. He may make a valid agreement, binding himself to make a particular * * * disposition of his property, if it be a reasonable one, and he may *validly renounce* the power to revoke his will, in the absence of fraud or deceit."

Assuming, for the purposes of discussing this particular objection, that the contract between Adams and his wife was, as she claims that it was, valid and executed by the making of the first will, we find no difficulty in holding that Adams thereby contracted away his right to revoke that will, and the second will, offered as a revocation, was ineffectual for that purpose. If it was, it furnishes no obstacle to the probate of the earlier will, and the probate of the second will may properly be enjoined. These principles have been applied heretofore in well-considered cases. Mut. Life Ins. Co. v. Holloday (Van Vorst,

J.) 13 Abb. N. C. 16; Le Brantz v. Conklin (Leventritt, J.) 39 Misc. Rep. 715, 80 N. Y. Supp. 967. We consider, therefore, that the action was well brought, and that the relief afforded by the judgment was within the authority and jurisdiction of the court.

[4-6] The point upon which the appellant argues most strenuously, and upon which she apparently mainly relies, is that, assuming the contract to have been made as testified to, it was void under the statute of frauds of this state, and under a similar statute of Colorado, where the agreement was made, in that it was made in consideration of marriage and was not expressed in writing. The plaintiff's answer to this contention is that the statute applies to executory and not to executed contracts, and that by the making of the first will the contract became fully executed.

It must be conceded, and the plaintiff does concede, that the mere fact of the marriage, standing alone, would not take the case out of the statute, and that even the reduction of the contract to writing after the marriage, with no other consideration than the marriage to support it, would not have avoided the bar of the statute. For these undisputed propositions the appellant cites ample authority. Neither of these cases, however, is before us. On the contrary, we have quite a different case: A prenuptial agreement that if plaintiff would marry the testator he would leave all his property to her by will; an acceptance of the proposal; a fulfillment of the agreement on plaintiff's part by marriage; a fulfillment of the agreement by testator by the making of such a will as he had agreed to make. Here, then, was an agreement entirely completed by both parties, in so far as it was possible to complete it. Plaintiff on her part had, in fulfilling her agreement, taken an irrevocable step. It would be most unjust and inequitable to hold that the decedent having in form fulfilled his part of the agreement, could rescind his action and revoke his performance. The case does not differ, in principle, from De Hierapolis v. Reilly, 44 App. Div. 22, 60 N. Y. Supp. 417, affirmed 168 N. Y. 585, 60 N. E. 1110, and Kerker v. Levy, 140 App. Div. 428, 125 N. Y. Supp. 357, affirmed 206 N. Y. 109, 99 N. E. 181.

The case before us greatly resembles Mutual Life Ins. Co. v. Holloday, supra, which, although decided at Special Term, is entitled to much weight for the cogency of its reasoning, as well as for the high reputation of the justice who decided it. It arose out of a verbal contract between a husband and wife, under which the husband conveyed to the wife, through a third party, a valuable piece of real estate, and she agreed that, in case she died before her husband, she would transmit the property to him by will. After the conveyance to her, and in pursuance of her agreement, she executed a will in favor of her husband. She predeceased her husband and remained seised and possessed of the property until her death. Shortly before she died she executed a will leaving the property away from her husband. The claim in that case, as in this, was that under the circumstances the first will was irrevocable, and that the second will was therefore invalid. In the course of the opinion Van Vorst, J., used many expressions which are as apposite to this case as if written in it. He said:

"If the agreement was valid in law and in equity, it would be a mockery of justice to say that, having executed the will, she fully satisfied her part of the agreement, and was at liberty to revoke it the next day. The right secured by her husband was substantial, and could not be defeated by another will. The spirit and true intent of the agreement, under which she became seised of and enjoyed the estate, obliged Mrs. Holloday to adhere thereafter to the terms of the devise in her husband's favor. * * * If one of the contracting parties induces the other so to act that, if the contract be abandoned, he cannot be restored to his former position, the contract must be considered as perfected in equity, and a refusal to complete it is in the nature of a fraud. * * * To defeat this conclusion, it cannot be insisted that a will is in its own nature ambulatory and revocable during the lifetime of the testator. This statement, true in itself, can have no application to a case where the testator has obligated himself by a valid agreement founded upon a good consideration, which is wholly inconsistent with the making of another will, by which he should attempt to devise the property, the subject of the agreement, to others than the person from whom the consideration proceeded, and to whom he was bound by the terms of the agreement to devise it. 'Indeed, the doctrine of the revocability of a will amounts merely to this: That a will is ambulatory during the lifetime of the testator, provided he has bound himself not to change it' (quoting Jarman on Wills [5th Ed.] 18, note). * * * The absolute right to dispose of property, as the testator may elect at any time during life, may be abridged or modified by express contract, as other rights often are. And the obligation not to revoke or change a will, although negative, is as much involved in the agreement as the affirmative duty to devise in a certain way."

The views thus expressed are well supported by Sherman v. Scott, 27 Hun, 331, cited by Judge Van Vorst as Sherman v. Butts. I have not overlooked the very recent case of Wallace v. Wallace, 216 N. Y. 28, 109 N. E. 872, in which the Court of Appeals had once more to consider the question of the irrevocability of mutual wills. To a certain extent that case is an authority in plaintiff's favor, for it recognizes the well-established rule that it is possible for a person to make a valid and binding contract to dispose of his property in a certain way by will. It was held, as it has been in many earlier cases, that the evidence required to establish the fact of such a contract must be clear and convincing, and the case turned upon the insufficiency of the evidence relied upon to establish the contract sought to be enforced. Two witnesses testified as to statements made by or in the presence of the decedent; but the court found that neither of these witnesses was disinterested, and their evidence as to the declaration they had heard was much too inconclusive to warrant a finding of such a contract as was sought to be established.

In the principal case we have, it is true, the evidence of but a single witness as to the declaration made by Adams concerning the agreement he had made with plaintiff; but that witness is clearly disinterested, and no attempt is made to impeach him or to discredit his testimony. Indeed, the appellant has argued her case upon the tacit assumption that the witness Scholder testified truly as to his conversation with the decedent. If that evidence be accepted as true, it discloses much more than chance declarations made by Adams as to his agreement with plaintiff. It appears, as has already been said, that Adams expressly declared that he stated to Scholder the terms of the contract with plaintiff, "so that, if at any time it became necessary, he wanted a witness both to the marriage and the agreement." It seems

to me that this testimony fulfills the most exacting requirements as to the quality of evidence necessary to establish the contract upon which plaintiff sues.

The judgment appealed from must be affirmed, with costs.

INGRAHAM, P. J., and LAUGHLIN and DOWLING, JJ., concur.   McLAUGHLIN, J., dissents.