In the Matter of the Accounting of BENJAMIN GOLDBERG et al., as Executors of ABRAHAM GOLDBERG, Deceased.

PAULINE GOLDBERG, Appellant; HENRY C. TURNER, as Special Guardian for PAUL I. DENVER, an Infant, et al., Respondents.

Argued May 20, 1937; decided July 13, 1937.

*Victor Levin* and *Maurice Brandt* for appellant. The subsequent marriage of the decedent to the appellant revoked the testator's pre-nuptial will by virtue of the provisions of section 35 of the Decedent Estate Law (Cons. Laws, ch. 13), as amended by chapter 459 of the Laws of 1932. (*Matter of Gaffken*, 114 Misc. Rep. 693; 197 App. Div. 257; 233 N. Y. 688; *Matter of Holmes*, 147 Misc. Rep. 394; *Matter of Tierney*, 148 Misc. Rep. 378; *Matter of Carnevale*, 248 App. Div. 62; *Matter of Snopek*, 149 Misc. Rep. 665; *Lathrop v. Dunlop*, 4 Hun, 213; 63 N. Y. 610; *Matter of Kelly*, 254 N. W. Rep. 437; *Hudnall v. Ham*, 183 Ill. 486; *Clevenger v. Stewart*, 215 Ky. 432; *Matter of Craft*, 164 Penn. St. 520; *McAnulty v. McAnulty*, 120 Ill. 26; *Lawman v. Murphey*, 321 Ill. 421; *Barlow v. Barlow*, 233 Mass. 468; *Francis v. Marsh*, 54 W. Va. 545; *Bagley v. Bagley*, 110 Ore. 368; *Hauck v. Anderson*, 14 Ariz. 502.) The oral agreement was void, being in violation of the Statute of Frauds, and it was not taken out of the statute by sufficient part performance. (*Hunt v. Hunt*, 171 N. Y. 396; *Gooding v. Brown*, 35 Hun, 148; *Caton v. Caton*, 1 Ch. 137; 2 H. L. 127; *Hughes v. Hughes*, 193 Pac. Rep. 144; *Stevenson v. Pantalcone*, 21 Pac. Rep. [2d] 703; *O'Brien v. O'Brien*, 197 Cal. 577; *Canada v. Ihmsen*, 240 Pac. Rep. 927; *Moultrie v. Hunt*, 23 N. Y. 394; *March v. March*, 222 App. Div. 825.) The widow was not estopped from taking under the statute. (*Carpenter v. Cornings*, 51 Hun, 638; *Lamb v. Lamb*, 18 App. Div. 250; *Graham v. Graham*, 143 N. Y. 573; *Matter of Brown*, 153 Misc. Rep. 282; *Sheldon v. Bliss*, 8 N. Y. 31; *Matter of Trevor*, 209 App. Div. 1; *Matter of Hayman*,

136 Misc. Rep. 199; 229 App. Div. 853; 256 N. Y. 557; *Stewart* v. *Stewart*, 7 Johns. Ch. 229.)

*Harold I. Cohen, I. Gainsburg* and *Philip Twersky* for executors, respondents. The complete execution of the antenuptial agreement by both parties is sufficient to avoid the bar of the Statute of Frauds. (*Adams* v. *Swift*, 169 App. Div. 802; *Mutual Life Ins. Co.* v. *Holloday*, 13 Abb. N. C. 16; *Lyons* v. *The Maccabees*, 192 App. Div. 109; *Miller* v. *Sire*, 224 Fed. Rep. 424; *Matter of Kilcourse*, 244 App. Div. 755; *Dygert* v. *Remerschnider*, 32 N. Y. 629.) Under the statute as it formerly read no revocation arose as a consequence of the marriage subsequent to the execution of the will. (*Matter of Scolpino*, 231 App. Div. 690; *Matter of De Coppet*, 142 Misc. Rep. 816; *Matter of Neufeld*, 145 Misc. Rep. 442.) Section 35 of the Decedent Estate Law, in that it requires the antenuptial agreement to be in writing, is no other than the expression of section 31 of the Personal Property Law (Cons. Laws, ch. 41) to the effect that agreements in consideration of marriage must be in writing. (*Miller* v. *Sire*, 224 Fed. Rep. 424.) The execution of the will and the subsequent marriage of the parties, pursuant to the oral antenuptial agreement, is sufficient to rebut the presumption of revocation of the testator's will. (*Matter of Lant*, 95 Penn. St. 279; *Matter of Craft*, 164 Penn. St. 520; *Hudnall* v. *Ham*, 183 Ill. 486; *Biggerstaff* v. *Biggerstaff*, 95 Ky. 154; *McAlpine* v. *McAlpine*, 116 Me. 321.) The amendment to section 35 of the Decedent Estate Law did not and could not, without constitutional infringement, give the appellant any rights in derogation of the vested contract rights which the testator and his estate had already acquired at the effective date of its enactment. (*Ralph* v. *Cronk*, 241 App. Div. 907; 266 N. Y. 428; *Davis* v. *Supreme Lodge*, 165 N. Y. 159; *McGahey* v. *Virginia*, 135 U. S. 662; *Collidge* v. *Long*, 282 U. S. 582; *Edwards* v. *Kearzey*, 96 U. S. 595; *Tennessee* v. *Sneed*, 96 U. S. 69; *Louisiana* v. *New Orleans*, 102 U. S. 203; *Walker* v. *Whitehead*, 16 Wall. 314.)

CRANE, Ch. J. This appeal brings up for review the effect of section 35 of the Decedent Estate Law (Cons. Laws, ch. 13), as amended by chapter 459 of the Laws of 1932, upon a will executed on June 6, 1930, twelve days before Abraham Goldberg the testator and Pauline Goldberg were married. The testator died on April 1, 1933, about a year after the amendment to section 35 of the Decedent Estate Law. The will was made pursuant to an oral ante-nuptial agreement and with a view to obtaining the consent of the woman to the marriage. This agreement to marry and to make a will was not in writing. It rests entirely upon oral testimony. If it were a valid agreement, in view of section 31, subdivision 3 of the Personal Property Law (Cons. Laws, ch. 41), binding upon both parties, a subsequent statute passed almost two years later making such an agreement void would, no doubt, be unconstitutional. We must first consider, therefore, the effect of this oral arrangement in the light of the Personal Property Law.

Abraham Goldberg, a widower in his sixties, and one Pauline Silverstone were brought together through the offices of a marriage broker some six months before their marriage. Property was a subject of discussion. Goldberg agreed to make a will giving to Mrs. Goldberg $5,000. Twelve days before their marriage he executed such a will which reflected the agreement. The part which interests us reads as follows:

" 9. I hereby give and bequeath unto Pauline Silverstone, the sum of Five thousand ($5,000.00) Dollars, provided however the said Pauline Silverstone shall become my wife. It is my intention that if, for any reason whatsoever the said Pauline Silverstone shall not join me in marriage and shall not become my lawful wife, that then, in that event, the said bequest of Five Thousand ($5,000.00) Dollars to her given by the terms of this will shall not be paid to her, but shall become part of my residuary estate and shall be disposed of as is provided in paragraph ' 11 ' of this will. In the

event the said Pauline Silverstone shall join me in wedlock, the provision herein to the said Pauline Silverstone, as aforesaid, I hereby declare is intended to be and is so given to her in full satisfaction and in lieu of and for her dower which she may or can in anywise claim or demand out of my estate."

The parties, as I have stated, were married twelve days after the making of this will. Goldberg died on April 1, 1933, and thereafter his widow elected to take her distributive share in the decedent's estate, as provided under section 35 of the Decedent Estate Law, as amended in 1932. The question was raised upon proceedings to settle the account of the executors in the Surrogate's Court, the appellant filing a cross-petition praying for a construction of the will of said Abraham Goldberg.

The Decedent Estate Law, as amended by the Laws of 1932, chapter 459, in effect March 28, 1932, provides in section 35 as follows:

" Revocation by marriage. If after making any will, such testator marries, and the husband or wife survives the testator, such will shall be deemed revoked as to such survivor, unless provision shall have been made for such survivor by an ante nuptial agreement in writing: * * * No evidence to rebut such presumption of revocation shall be received, except to show the existence of such ante nuptial agreement. This section as amended shall apply only to wills executed prior to September first, nineteen hundred thirty; and wills executed after such date shall not be affected in any way by the provisions of this section as heretofore contained herein or as amended."

As above stated, if this section applies to the facts of this case the widow is entitled to her distributive share, as the will was revoked as to her by the subsequent marriage. All the provisions of this section fit exactly into the facts of this case. After the making of the will Goldberg, the testator, married Pauline Silverstone, who

became Mrs. Goldberg. The will thereupon was revoked as to her " unless provision shall have been made for such survivor by an ante nuptial agreement in writing." There was no ante-nuptial agreement in writing. The presumption of revocation could not be rebutted or overcome by testimony showing an *oral* ante-nuptial agreement. The presumption of revocation is conclusive, and made so by the statute. All the evidence in this case, taken before the referee to show the oral ante-nuptial agreement, was of no effect and could not reinstate the will. The widow, therefore, would be entitled to her distributive share unless this section 35 is unconstitutional, as applicable to this oral ante-nuptial agreement.

The respondent insists that this oral agreement was legal and enforceable in spite of the provisions of section 31 of the Personal Property Law, commonly known as the Statute of Frauds. Familiarity with the section never justifies the omission of its exact words.

" § 31. Agreements required to be in writing. Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking: * * *

" 3. Is made in consideration of marriage, except mutual promises to marry."

The agreement of Goldberg to make a will was in consideration of marriage and unenforceable. He made a will, but this did not take effect and could not take effect until his death. Any t me before his death he could change his will, make a new will. These are elementary propositions of law known to everyone. Why could he not make a new will in this case? What was bind ng upon him that prevented him from making a new will or revoking the one he had made? It was the implied or understood agreement with Mrs. Goldberg that he would not revoke his will or make a new one. This is the

force and effect which the respondent would give to the ante-nuptial agreement, not merely that he would make a will. This in itself amounted to very little, if anything. The agreement valuable to Mrs. Goldberg was the restraint which Goldberg impliedly put upon himself not to revoke the will. This was the moving consideration, and void because not reduced to writing. At any time after June 6, 1930, the date of the will, and April 1, 1933, when it was to take effect through Goldberg's death, he was free to change it. The only thing which could possibly prevent was his implied agreement not to change it, and this was void as not being in writing. There was no other consideration, as the marriage itself constitutes no part performance of an oral ante-nuptial contract so as to take it out of the operation of the Statute of Frauds. (*Hunt* v. *Hunt*, 171 N. Y. 396.)

The making of the will in itself, the mere signing of a paper, having no effect until death, was no part performance of a contract or agreement not to revoke it. We must not confuse the making of a will with those acts which are complete in themselves and constitute performance or part performance, such as the giving of a deed, the transfer of securities or the release of rights or obligations having present effect. A contract not to revoke a will or to make a will may be enforced even when not in writing if there has been a change in the position of the parties other than through marriage, but no such change takes effect and nothing is parted with by making a will which in and of itself accomplishes nothing until death.

A will speaks from the date of death, not from the date of its execution. This is the view which has previously been taken. In *Gooding* v. *Brown* (35 Hun, 148, 150), Judge BRADLEY, with whom concurred Judge HAIGHT, both subsequently members of this court, said: "The fact that the plaintiff executed a will does not establish performance of the contract on his part so as to

divest himself of any rights of property, nor did it place him in a situation from which he could not retreat without prejudice to any rights existing at the time the agreement was made."

In *Caton* v. *Caton* (1 Ch. 137, 147; affd. on appeal, 2 H. L. 127) the court, in writing upon facts similar to those here, said: " The preparing and executing of the will caused no alteration in the position of the lady, and I presume it will not be argued that any consequence can be attached to acts of part performance by the parties sought to be charged. * * * As a will is necessarily until the last moment of life revocable, a contract to make any specified bequest, even when a will having that effect has been duly prepared and executed, is in truth a contract of a negative nature — a contract not to vary what has been so prepared and executed. I do not see how there can be part performance of such a contract." (See, also, *Gould* v. *Mansfield*. 103 Mass. 408, and *Canada* v. *Ihmsen*, 33 Wyo. 439.)

The courts below have decided in respondents' favor solely upon the theory that the making of the will was part performance within the Statute of Frauds and, therefore, created an enforceable contract. In this we think they were in error for the reason stated. We cannot follow all the reasoning in *Adams* v. *Swift* (169 App. Div. 802), a case in which Judge McLAUGHLIN, subsequently of this court, dissented. The case of *Ralph* v. *Cronk* (266 N. Y. 428) related to a contract which was valid before the amendment to the Personal Property Law in 1933.

We, therefore, conclude that section 35 of the Decedent Estate Law, as amended, applied to the facts of this case; that Goldberg's will was revoked by his subsequent marriage; that his widow is entitled to her distributive share of his estate, and is not denied these rights by reason of the provision in her favor in said will.

The order of the Appellate Division and the decree of the Surrogate's court should be reversed and the proceed-

ing remitted to the Surrogate's Court for disposition in accordance with this opinion, with costs to the appellant in all courts payable out of the estate.

LEHMAN, O'BRIEN, HUBBS. LOUGHRAN, FINCH and RIPPEY, JJ., concur.

Ordered accordingly.