61 N.J. Super. 476 (1960)
161 A.2d 295
ADA W. GILBERT, PLAINTIFF,
v.
JOHN E. GILBERT, JR., ELIZABETH GILBERT, HIS WIFE, MARGARET E. GILBERT, A SINGLE WOMAN, AND ALEXANDER DENBO, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided May 31, 1960.
*478 Mr. James M. Davis, Jr., appeared for plaintiff (Messrs. Powell and Davis, attorneys).
Mr. Louis B. Le Duc appeared for defendants.
WICK, J.S.C.
This is a motion to dismiss the complaint for failure to state a claim upon which relief can be granted.
The facts, as presented by the complaint, are as follows: The plaintiff met John E. Gilbert in 1949 and, after some acquaintance with him, he sought to persuade her to marry him, but she refused to do so unless he would make a suitable property settlement on her prior to the marriage. He thus offered to provide her with a home of her own and a housekeeper and plaintiff accepted this offer with the proviso that the agreement be reduced to writing and signed by them. They fixed September 10, 1949 as the date of the marriage. On August 27, 1949, she having become insistent that she would not marry him unless a written agreement was executed, he, in order to further induce the marriage, executed a will (a copy of which is attached to the complaint) in which he left her certain real property, a Buick automobile and one-third of whatever *479 cash he had in the bank. In reliance on the provisions of the will for her benefit and his representations that it would be his last will, she entered into the marriage on September 10, 1949. In October or November of 1949 he made a further will which, as she is advised and believes, left her his entire estate. On October 27, 1950 he executed a further will leaving his entire estate to his children, Margaret E. Gilbert and John E. Gilbert, Jr. This is the last will he left on his death on March 1, 1960. She has filed a caveat with the Surrogate of Burlington County against the probate of that will and the admissibility of that will to probate has not yet been adjudicated.
She seeks judgment that the execution of that will by him was a breach of their antenuptial agreement and a fraud; the probate of that will would constitute a breach of the antenuptial agreement and perpetrate a fraud on her; the will of August 27, 1949 was irrevocable without her consent except by a will more favorable to her and is valid and entitled to probate; she is the owner of the property that was to be left to her under either the will of August 27, 1949, or that of October or November, 1949; the probate of the will of October 27, 1950 would create a cloud on her title to the real and personal property which is hers under the earlier two wills. She would further have the probate of the October 27, 1950 will restrained.
The plaintiff asserts a second cause of action relating to the 1949 automobile mentioned above. She says that she purchased it with her funds on August 10, 1949 and, to promote relationships of harmony and confidence between herself and her intended husband, allowed the title to be placed in his name. She would have it adjudged that the transfer of the automobile was not a gift, but was in trust and that she is its owner.
The will of October 27, 1950 makes John E. Gilbert, Jr., Margaret E. Gilbert, and Alexander Denbo executors. They have been made defendants as the prospective executors of that will and John and Margaret also as the prospective *480 devisees and legatees under that will. John's wife, Elizabeth, is also made a party defendant evidently as the prospective holder of an inchoate right of dower in the real property passing to her husband under that will.
It might be noted that the first cause of action comprehends two related agreements. One is to provide the plaintiff with a home of her own and a housekeeper coupled with the promise that this agreement would be reduced to writing. The other is the promise or representation by John E. Gilbert, Sr. that he would not change the will of August 27, 1950. (It should be noted that we are not now concerned with the question of whether the second agreement constituted a vacation of the first.) The complaint demonstrates no consideration for either other than the marriage and neither is evidenced by any written memorandum. The defendants thus raise the defense of the statute of frauds as it relates to agreements made upon consideration of marriage. They make no reference to the statute as it relates to contracts concerning real estate, but such would also appear to be applicable to this agreement insofar as it concerns the transfer of real property. R.S. 25:1-5. The plaintiff counters that the breach of the antenuptial agreements constitutes a fraud and the statute of frauds may not be raised to shield a fraud.
The breach of an antenuptial agreement is not such a fraud as will prevent the application of the statute of frauds. Herr v. Herr, 13 N.J. 79 (1953), and cases therein cited. It has also been decided that mere breach of the further agreement to reduce the antenuptial agreement to writing is not such a fraud as will prevent the application of the statute. In Alexander v. Alexander, 96 N.J. Eq. 10 (Ch. 1924) it is stated by Leaming, V.C., as follows:
"Fraud, alone, will deny the intervention of the statute. Equity at all times will lend its aid to defeat a fraud, notwithstanding the statute of frauds. But the fraud against which equity will relieve in this class of cases, notwithstanding the statute, is not the mere moral wrong of repudiating a contract actually entered into, which, by reason of the statute, a party is not bound to perform for want *481 of its being in writing. Bro. Stat. Fr. § 439; Manning v. Riley, supra. The fraud must be inherent in the transaction, such as a false representation that a contemplated written agreement has been executed pursuant to the parol agreement, or other similar artifices. The authorities do not appear to support the dictum of Mr. Justice Wells, in Glass v. Hulbert, 102 Mass. 24, as contained on page 39 of the reported case, to the effect that the assurance that a settlement would be executed, will remove the case from the bar of the statute. 2 Story Eq. Jur. (13th ed.), Sec. 768; Montacute v. Maxwell, 1 P. Wms. 618; S.C., Pr. Ch. 526; Eq. Cas. Abr. 19. In the counterclaim here presented no written agreement or settlement was contemplated by the parties, and no fraud appears."
This statement is evidently based primarily on the noted citation to Story Eq. Jur. In the eighth edition, Sec. 768 and in the fourteenth edition, Sec. 1054, it is stated:
"Another exception to the statute, turning upon similar considerations, is where the agreement is intended by the parties to be reduced to writing according to the statute, but it is prevented from being done by the fraud of one of the parties. In such a case Courts of Equity have said that the agreement shall be specifically executed; for otherwise the statute, designed to suppress fraud, would be the greatest protection to it. Thus if one agreement in writing should be proposed and drawn, and another should be fraudulently and secretly brought in and executed in lieu of the former, in this and the like cases equity would relieve. So if instructions are given by an intended husband to prepare a marriage settlement, and he promises to have the settlement reduced to writing, and then fraudulently and secretly prevents it from being done, and the marriage takes effect in consequence of false assurances and contrivances, a specific performance will be decreed. But if there has been no fraud and no agreement to reduce the settlement to writing, but the other party has placed reliance solely upon the honor, word, or promise of the husband, no relief will be granted; for in such a case the party chooses to rest upon a parol agreement and must take the consequences * * *."
In a footnote appended at the end of this quotation (No. 1 in the 14th ed. and No. 7 in the 8th ed.) it is stated:
"It has sometimes been attempted to except from the statute cases where the parties have expressly agreed that their contract should be reduced to writing. But this doctrine, except in cases of fraud, has been expressly denied."
*482 It might be said that the line of distinction developed by these authorities is that an assurance with a subsequent change of mind is a mere moral wrong while an assurance with a present intention never to follow through with it is a fraud which will prevent the application of the statute. This, certainly, is a correct statement of the two different situations. However, there is further involved, as is implicit in the principles quoted above, the problem of what is sufficient proof of the fraudulent intention. That is, may the court, upon mere proof that there was an assurance and a later breach of it raise the inference that this was not a mere change of mind, but a deliberate plan. It seems to me that the two authorities noted above require something more. A reference to the comments made by Leaming, V.C. in Alexander v. Alexander, supra, concerning Glass v. Hulbert, 102 Mass. 24, 3 Am. Rep. 418 (Sup. Jud. Ct. 1869), further support this conclusion. The dictum in Glass v. Hulbert, referred to by Leaming, V.C., states as follows:
"* * * In such cases the marriage, although not regarded as a part performance of the agreement for a marriage settlement, is such an irretrievable change of situation, that, if procured by artifice, upon the faith that the settlement had been, or the assurance that it would be executed, the other party is held to make good the agreement, and not permitted to defeat it by pleading the statute. Maxwell v. Mountacute, Prec. in Ch. 526. Browne on St. of Frauds, Secs. 441-445."
It is to be noted that the court here speaks of an assurance that the settlement would be executed which is used as an artifice, with a present intention never to fulfill them. Nevertheless, Leaming, V.C. feels that this is not enough. The reason for this conclusion is clear. Both the statement that the agreement had been made and the statement that it would be made amount, in essence, to the same thing if the latter is made with an intention not to fulfill. It is the insincerity, the lie, that makes the fraud, but, as a practical matter, Leaming, V.C., feels that the finding of *483 a lie cannot be based on a mere inference drawn from the existence of an assurance and its subsequent breach.
A similar conclusion is reached in Hackney v. Hackney, [27 Tenn. 452], 8 Humph. 452 (Sup. Ct. 1847), Chafee & Simpson, Cas. Eq.2d ed., p. 561 (1946).
After quoting the passage noted above from Story Eq. Jur. with some comment and citing some cases the court states:
"These are all the authorities we deem it necessary to quote upon this subject, and they fully and conclusively establish the position that the fraud spoken of which will take a case from within the operation of the statute of frauds and perjuries is not fraud in making the promise with no intention of complying with it; but a fraud by which the reduction of it to writing is prevented, the parties so intending; and the complaining party being induced to believe that it had been done, and this fraud may be perpetrated in two ways  one by signing a false paper, at the same time inducing the belief that it is the true one, and the other by inducing the belief that the paper had been signed when in fact it had not. But they also clearly establish that, if there was no intention of reducing the promise to writing, or if there were knowledge that though there was an intention of reducing it to writing, that this had not been done, and the marriage be solemnized upon the parol promise of the husband, the promise is void under the statute, no matter with what protestations of sincerity and pledges of honor in such pledges and protestations, and no matter whether the party making it at the time intended to perform it, or contemplated a false violation of it; for it is folly to trust when the law prohibits and avoids the promise * * *.
The distinction attempted to be drawn between cases where the party promising at the time intended to perform it, though he afterwards refuse, and where he had no such intention at the time, but made the promise with intention to deceive, insisting that it is a fraud in the latter case which will be relieved against, though it is not in the former, is too refined and unsubstantial for a basis for judicial decision, and, moreover, the distinction is not warranted by authority."
Chafee and Simpson take the position that Peek v. Peek, 77 Cal. 106, 19 P. 227, 1 L.R.A. 185, 11 Am. St. Rep. 244 (Sup. Ct. 1888) and Green v. Green, 34 Kan. 740, 10 P. 156 (Sup. Ct. 1886) are contra to the decision just noted. In the latter, the husband was induced into the marriage upon the representation by the wife that she owned a 160-acre *484 farm and that its proceeds should go to their support after they were married so long as they lived, and then to her children. They were married on August 31, 1882. However, on August 30, 1882, she had executed, without his knowledge, deeds conveying her farm to her children. After the marriage she controlled and rented the farm in her own name, but he received none of the proceeds. The deeds were delivered to the children on March 5, 1884. She deserted her husband, whether before or after delivery of the deeds does not appear. In the former the wife married the husband on the assurance that he would, on or before the marriage, make a conveyance to her of certain real property. On the day before the marriage he told her he was going to have the deeds drawn, but returned in a few minutes saying that it could not be done that day. The next morning he again said he would have the deeds drawn but returned saying that they were too busy at the court house, but that he would have it done as soon as practicable. She accordingly married him that night. That very same morning, however, when he was making excuses, he had a deed executed conveying the property to his son by a former marriage.
These cases, although literally they may not come within statements and examples found in Hackney v. Hackney, supra, seem to be consistent with the fundamental premise of that case, and certainly, on their facts, would appear consistent with the proposition laid down by Story and Leaming. In both, the fraud is evidenced by more than the mere assurance and subsequent breach, rather there is positive evidence of the fraudulent purpose.
In Hughes v. Hughes, 49 Cal. App. 206, 193 P. 144 (Dist. Ct. App. 1920) the authorities on this question are thoroughly analyzed and the court comes up with the following conclusion:
"* * * The facts present nothing more than the mere omission to put the contract into writing before the marriage, and a failure to perform it thereafter. It does not appear that the defendant in any manner prevented the due execution of a valid marriage settlement *485 in writing, such as would have satisfied the statute. It is not alleged, or contended, that the plaintiff was induced through deceit, false statement, or concealment of the defendant to waive a written agreement and rely upon the promises in parol, before entering into the marriage relation. 2 Pomeroy's Equity Jurisprudence, Fourth Edition, par. 921. For aught that appears in the amended complaint, the defendant may have entered into his engagements in the highest good faith, and with every good intention, and with full ability to perform. Granting, for the purpose of the discussion, that the plaintiff may have been led into the marriage by the Lochinvar courtship of the aged swain, the inducement went only to that relation. By no fraud, trick, or device, so far as the record discloses, was she prevented from securing what the law sanctions, a written marriage settlement. Equity therefore, can afford her no relief."
For one case which is certainly contra in its statement of the law see Moore v. Allen, 26 Colo. 197, 200, 57 P. 698, 77 Am. St. Rep. 255 (Sup. Ct. 1899); Allen v. Moore, 30 Colo. 307, 70 P. 682 (Sup. Ct. 1902). However, it is stated in Hughes v. Hughes, supra, that the case is actually based on part performance in that the wife was put into actual possession and made valuable improvements on the property which was to be conveyed to her. This analysis of the case appears to be in error. The first decision of the case is based on the theory of fraud and in the second it is expressly stated, "The cross-complaint also alleged that, in pursuance of her antenuptial agreement, she entered into possession of the premises, and had made lasting and valuable improvements thereon, although we do not regard this averment as material to a determination of the case as now presented." [30 Colo. 307, 70 P. 682.] And later, "Her right to these premises under this antenuptial agreement, does not depend upon the question of part-performance, but is based upon the ground that she was induced to enter into a marriage contract on the faith of an oral promise made by the man she married to convey her the premises in dispute, and that his failure to keep his promise in such circumstances is such a fraud upon her as will take the promise to convey out of the statute of frauds * * *."
*486 It is thus apparent that the complaint fails to allege or demonstrate a fraud that will prevent the application of the statute. Nothing appears more than a subsequent breach of the several interrelated promises. There is no allegation that the reduction of the agreement to writing was prevented by the contrivance or artifice of the husband similar to or in the nature of those indicated by the authorities above.
The plaintiff further argues that the execution of the will in pursuance of the antenuptial agreement followed by the marriage constitutes such part performance as to take the case out of the statute. A case in point, which plaintiff relies on, is Adams v. Swift, 169 App. Div. 802, 155 N.Y.S. 873 (1915). This, however, would not appear to be the law in New Jersey. In Alexander v. Alexander, 96 N.J. Eq. 10 (Ch. 1924), Leaming, V.C., states as follows:
"The rule in equity that part performance may remove a parol contract from the operation of the statute of frauds does not extend to antenuptial parol agreements made in consideration of marriage. Manning v. Riley, 52 N.J. Eq. 39; Watkins v. Watkins, 82 N.J. Eq. 483; affirmed, 85 N.J. Eq. 217. The act of marriage is not regarded as part performance in that class of cases; indeed, it has been stated by our court of errors and appeals that the equitable doctrine that part performance will remove the inhibition of the statute of frauds applies only to contracts relating to lands, and does not extend to contracts relating to other matters. McElroy v. Ludlum, 32 N.J. Eq. 828, 832."
It might be said that this statement was too broad inasmuch as the court did not have before it a will executed in pursuance of the agreement and the case of McElroy v. Ludlum, supra, involved an employment contract.
However, the point seems to have been laid at rest in Russell v. Russell, 60 N.J. Eq. 282, 287 (Ch. 1900), affirmed 63 N.J. Eq. 282 (E. & A. 1901), in which it is stated:
"Equity will grant relief where specific performance is sought of parol contracts, though their enforcement is prohibited by the statute of frauds, in cases where the party seeking performance has been *487 induced partly to perform the parol contract. This right to relief is based upon the fact that to apply the statute, would, in view of his changed position, aid rather than prevent a fraud. But acts of part performance by the party sought to be charged cannot be set up as a reason for the exceptional action of this court in refusing to apply the statute. It is not his change of position, but that of the other party, induced thereto by the parol contract, which makes the case one of hardship and injustice.
This is well illustrated by Lord Chancellor Cranworth in Caton v. Caton, 1 Ch. App. Cas. [*]148, in a cause which, in all of the essential facts that call for the application of the statute of frauds to prohibit the enforcement of the alleged parol contract, is similar to that now under examination. There was a parol agreement that in consideration of marriage the husband would make a will giving the intended wife all of her own, and also some of his, property. The marriage took place, and the husband made a will accordingly, but afterwards made a different will. The wife, after his death, filed her bill to enforce the parol contract, alleging her marriage as the element of part performance which should take the case out of the statute. But Lord Chancellor Cranworth held that though marriage is necessary to bring a case within the statute, to hold that it also takes it out of the statute would be a palpable absurdity. He further declared that it is certain that marriage itself is no part performance, within the rule of equity.
In this his lordship's judgment followed Montacute v. Maxwell, 1 P. Wms. 620, and Lassence v. Tierney, 1 Macn. & G. [*]571, and it has been accepted in this court in Manning v. Riley, 7 Dick. Ch. Rep. 44. He further declared that the execution of the will by the husband caused no alteration of the position of the lady, save in the fact of her marriage, which, as above stated, could not be held to be such a performance as took the parol agreement out of the statute, and that `it will not be argued that any consequence can be attached to acts of part performance by the party sought to be changed,' following this with a very apt illustration. In the present case there is no pretence that the complainant has done any act of part performance of the parol contract which she seeks to have enforced, save only the single incident of her marriage."
It might also be noted that Adams v. Swift, supra, on which plaintiff relies, was overruled on this point by In re Goldberg's Estate, 275 N.Y. 186, 9 N.E.2d 829, 832 (Ct. App. 1937), in which it is stated:
"The making of the will in itself, the mere signing of a paper, having no effect until death, was no part performance of a contract or agreement not to revoke it. We must not confuse the making of a will with those acts which are complete in themselves and constitute performance or part performance, such as the giving of a *488 deed, the transfer of securities, or the release of rights or obligations having present effect. A contract not to revoke a will or to make a will may be enforced even when not in writing if there has been a change in the position of the parties other than through marriage, but no such change takes effect and nothing is parted with by making a will which in and of itself accomplishes nothing until death."
It thus appears that the complaint must be dismissed as to this cause of action.
It must also be noted that this action is in error procedurally. The probate of the offending will cannot be restrained. The proper action is in the nature of specific performance impressing a trust upon the assets of the estate. Sellyei v. Lecso, 28 N.J. Super. 593 (Ch. Div. 1953); Minogue v. Lipman, 25 N.J. Super. 376 (Ch. Div. 1953), affirmed 28 N.J. Super. 330 (App. Div. 1953). Thus, it would appear that the probate proceeding of the last will should first be determined. If the plaintiff wishes to file an amended complaint, the proper time to do so would be after some will has been admitted to probate or an intestacy has been determined.
The second cause of action also suffers from a procedural difficulty which is common to the first cause of action as well. At this time there is no representative of the estate or devisee or legatee before the court, only persons having a potential status as such. The first cause of action, as noted above, is premature. The question then is whether the court should appoint a temporary administrator to take charge of the car and defend the second cause of action. The claim is small, there appears to be no necessity for its immediate determination, it might very well be that the general administrator or the executor would allow or settle it. Under the circumstances, the more direct and convenient remedy would be to await the appointment of the executor or general administrator and then present the claim. This action, too, will thus be dismissed.
An order dismissing the complaint will be entered accordingly.