In the Matter of the Estate of ABRAHAM GOLDBERG, Deceased.

Surrogate's Court, Kings County, November 9, 1937.

*Potter & Potter*, for Benjamin Goldberg and Irving Goldberg, as executors, etc.

*Maurice Brandt*, for Pauline Goldberg, widow and objectant.

WINGATE, S. The facts underlying the present application are wholly unprecedented in the knowledge or experience of the court. The executors under the will of this decedent filed their account on February 14, 1934. Objections were interposed by the widow on two grounds, *first*, that the will, being an ante-nuptial instrument, was revoked as to her, in consequence of which she was entitled to distributive rights as in intestacy and was not limited to the $5,000 bequest therein contained; and, *second*, to certain acts or omissions of the executors.

Since in any event the estate of the decedent for which accounting was made was more than ample to satisfy the $5,000 bequest under the will, the primary issue concerned the right of the widow to take the one-third of the net estate to which she laid claim in her

first objection. If this claim was without substance, she was obviously lacking in status to interpose the second series of objections, since even if the acts of the executors had been improper, she would have suffered no loss by reason thereof.

The issues raised by the objections were referred to a prominent member of the bar, widely experienced as a referee in such matters. It was his conclusion on the facts disclosed that the widow was limited to the testamentary provision made for her and that in consequence her other objections must be overruled.

For the purpose of avoiding the necessity of a second reference in the event that the court disagreed with his conclusion in this particular, however, he proceeded, with the acquiescence and co-operation of counsel for all interested parties, to try, fully and on the merits, all of the other objections of the widow which could possess potency only in the event that she was entitled to share in the estate assets as in intestacy, observing in his extremely comprehensive and painstaking report: " The question of the widow's rights are thus disposed of and if my conclusion be correct she is only entitled to the $5,000 given her under the will. Her other objections to the items in the account would thus fall, because there appears to be ample funds in the estate to pay the widow's legacy. If, however, this report be not confirmed and the surrogate should hold that the widow is entitled to take her intestate share, it may become necessary for the surrogate or another referee to pass upon the remaining objections of the widow, and as there is before me testimony covering these objections, I will pass upon the objections." The following eight pages of the report consider at length the merits of these objections and arrive at stated conclusions respecting their validity, which are embodied in specific findings incorporated on the six final pages of the report.

The widow duly excepted to the findings of the referee denying her alleged intestate rights in the estate. The executors moved for the confirmation of the report in this particular. The surrogate concurred in the result of the referee (*Matter of Goldberg*, 157 Misc. 49) and confirmed the report in this regard. Since by reason of this fact, the objections of the widow were deemed academic, the conclusions of the referee relating to them were not considered by the court, as was made apparent by a memorandum appearing in the New York Law Journal on February 14, 1936 (p. 812), in which it was said " since * * * the report of the referee had made his determination of such secondary objections purely on the contingency of a reversal of his decision on the first question, the secondary rulings were not passed upon by the court and fell of their own weight."

A decree was thereupon entered embodying the results attained, adjudging that the widow was entitled only to the $5,000 bequeathed her by the will, and overruling her other objections to the account, obviously solely for the reason that under this decision, she possessed no status to interpose them. Appeal was prosecuted from this decree by the widow, her complaint being addressed solely to the adjudication thus limiting her devolutionary rights. The decree was unanimously affirmed by the Appellate Division (249 App. Div. 751). Thereupon, upon leave granted by the Court of Appeals, a further appeal was taken to that tribunal. This resulted in a reversal (275 N. Y. 186) and a determination that the will was revoked as to the widow and that she was entitled to share in the estate as in intestacy. The case is accordingly again before the court for disposition in accordance with the opinion of the Court of Appeals.

Since no ruling has ever been made by the court upon the merits of the objections of the widow to the acts of the executors in their conduct of the affairs of the estate, they must obviously receive attention, since the determination of the Court of Appeals has affirmatively decided her status as a person entitled to interpose them.

The present motion on behalf of the widow seeks a confirmation by the court at this time of the second portion of the report of the referee wherein he passed upon them.

The primary objection interposed to the adoption of this course is predicated upon the fact that the former decree entered herein in terms dismissed the objections of the widow in their entirety. It does not appear to be the theory of the accountants that this fact rendered the issues thus raised *res judicata* as against the widow. Such a position would, indeed, be untenable, since, as has hereinbefore been outlined, the former determination was not made on the merits, and it is only as to such that a former adjudication interposes an effective barrier to further consideration. (*Rudd* v. *Cornell*, 171 N. Y. 114, 127 *et seq.; Matter of Lauderdale*, 150 Misc. 214.) In the present instance, the record clearly demonstrates that no adjudication upon the merits of the objections has ever been made, their dismissal being merely a necessary collateral to the holding, now reversed, that she lacked the necessary status to authorize their interposition. The reversal of the sole support for the determination inevitably carries with it all dependent determinations founded thereon with the result that the objections are still pending and undetermined in like manner as if no decree purporting to dispose of them had ever been made. The result, therefore, is that these objections are still existing obstacles to the settlement of the account.

Under ordinary circumstances the next step in the process of adjudicating the account would be the holding of a hearing on the validity of these objections. The widow, however, urges that such a hearing on the merits has been had before a referee duly appointed for the purpose, and that there is now before the court for its action a report of such referee passing upon the issues after full and complete trial by all interested parties at which they had every opportunity necessary or desired for the substantiation of their contentions.

The only answer made to this position by the present attorneys for the accountants (who have replaced those who represented them on the former trial) is that their examination into the record and the facts indicates that the former trial was somewhat ineptly conducted. It is, therefore, urged that the entire matter be remitted to the referee for further hearing and report.

It is one of the primary principles of Anglo-Saxon jurisprudence that every man is entitled to his day in court on any issue affecting his life or fortune. (*Baldwin* v. *Yellow Taxi Corporation*, 221 App. Div. 717, 718.) There is, however, no law or policy which permits an individual to receive a second opportunity of this variety when he has already enjoyed one fair trial of his alleged rights. The statutory specifications of the situations in which a new trial may be secured (Civ. Prac. Act, §§ 549–556) and their interpreting decisions, limit the right to such an unusual privilege substantially to those cases in which the result of the trial was demonstrably contrary to the evidence or contrary to law or would presumably have been different had certain evidence been introduced " which could not with reasonable diligence have been obtained on the first trial." (*Matter of Hutchins*, 143 Misc. 618.)

Were a right to obtain a re-examination of fairly litigated questions to be accorded, litigations already often oppressively extended and expensive would become wholly intolerable with consequent increased popular disapproval of the administration of the law.

In the present case there is no assertion of any semblance of any of the reasons for the granting of a new trial which are the prescribed prerequisites to such a privilege. Perhaps the former counsel of the accountants may not have put to as advantageous use the material available for defeat of the objections of the widow as their present counsel would have done or might now do were they to be accorded the opportunity. Conceivably, on the other hand, they may have fully and adequately defended the conduct of their clients so far as the facts warranted. In either event, these clients have been accorded the sole privilege which the law gives them in this connection, namely, of adducing any facts tending to absolve

them from liability through the medium of counsel of their selection. After full presentation of their side of the controversy a result has been attained by the referee, and there is no present intimation that such result is not in accordance with the law on the facts adduced or that there is any other newly-discovered evidence now available which would cause an alteration in the result. Under such circumstances the result must stand, and that portion of the report of the referee which was made conditional on the establishment of the widow's status to interpose objections to the acts of the accountants will be confirmed.

Enter order on notice in conformity herewith.