CHARLES E. WEEKS *vs.* RUFUS F. CRIE, and others.

Knox.     Opinion December 19, 1900.

*Sales.     Stat. of Frauds.     Entire and Separate Contracts.     R. S., c. 111, § 4.*

The application of the statute of frauds in the case of the purchase of a number of articles at the same transaction, may depend upon whether there is one contract or more.

The mere fact that a separate price is agreed upon for each article, or even that each article is laid aside as purchased, makes no difference so long as different purchases are so connected in time or place, or in the conduct of the parties, that the whole may fairly be considered as one transaction.

But whether there is one entire contract for the whole, or whether the contract for each remains separate and distinct, may depend upon many circumstances, and presents a question of fact to the jury.

Where there are two separate contracts of sale, one for herring and one for hake, the acceptance and receipt of the herring will not take the contract for the hake out of the statute of frauds.

But if there is in fact only one contract, for both herring and hake, negotiated for, it may be successively, a delivery followed by an acceptance and receipt of the herring will take the hake out of the statute.

An instruction in such a case which withdraws from the jury the consideration of other facts and circumstances, having a tendency to show the character of the contract, is deemed erroneous.

Whether negotiations, under all the circumstances, constitute one contract or more is a question of fact, and should be submitted to the jury.

ON EXCEPTIONS BY DEFENDANTS.

Assumpsit to recover damages for non-delivery of a quantity of fish, which the plaintiff alleged he purchased of the defendants under an oral contract. The defendants denied the contract and invoked the statute of frauds.

The verdict was for plaintiff, and damages assessed at $128.70.

At the trial, the plaintiff claimed, and introduced evidence tending to prove, that on the first day of November, 1898, the defendants orally agreed to sell him from three to five hundred drums of hake at $1.65 per kentle, to be delivered at Rockland when called for by him; and at the same interview agreed to sell him ten barrels of split herring at $4.25 per barrel, to be delivered in Rockland by next boat from Criehaven, which would be within one week; that he, the plaintiff, orally agreed with the defendants to purchase said hake and herring on said terms; that the herring were delivered according to the agreement and paid for by the plaintiff; that on the twentieth day of January, 1899, the plaintiff requested the defendants to deliver him three hundred drums of hake in accordance with the alleged agreement, and that the defendants refused to deliver them to him.

The defendants denied that they agreed to sell the plaintiff any hake, but admitted that they did sell the plaintiff the ten barrels of herring which were delivered according to agreement.

There was no evidence showing or tending to show that the alleged contract was in writing, or that any memorandum thereof was signed by the defendants, or that anything was paid in earnest to bind the bargain, or that any part of the hake were delivered; and the defendants claimed that if a verbal agreement for the sale of the hake was made, it was void under the statute of frauds.

The presiding justice, among other things, instructed the jury as follows:

"And so I instruct you that if the contract for the hake and the contract for the herring were made at the same interview, even if the contract for the hake was finished and concluded before the contract for the herring was made—that even under those circumstances, the delivery of the herring would take the contract for the sale of the hake out of the statute of frauds. It would be a part delivery, so that the statute of frauds would not apply. I so instruct you pro forma, for the purposes of this trial, in order that you may reach and pass upon the question of fact between the parties."

"And I instruct you further, for the purposes of this trial, that if the defendant agreed to sell the hake in controversy here to the plaintiff, and the plaintiff agreed to purchase them—if their minds concurred in making such a contract, the plaintiff would be entitled to recover, regardless of the statute of frauds. If I am wrong in this law, of course, as I said before, there is a way open to have the error rectified."

To which instructions of the presiding justice to the jury, the defendants by their counsel, then and there, before the jury retired, excepted, and were allowed their exceptions.

The charge of the presiding justice was made a part of the exceptions.

*J. E. Moore*, for plaintiff.

*R. F. and J. R. Dunton*, for defendants.

SITTING: WISWELL, C. J., WHITEHOUSE, STROUT, SAVAGE, POWERS, JJ.

SAVAGE, J. At the trial of this case, the plaintiff claimed and introduced evidence tending to show that the defendants, in November 1898, orally agreed to sell him from three to five hundred drums of hake at $1.65 per kentle, to be delivered at Rockland when called for by him; and at the same interview agreed to sell him ten barrels of split herring at $4.25 per barrel, to be delivered in Rock-

land by next boat from Criehaven, which would be within one week; that he, the plaintiff, orally agreed with the defendants to purchase the hake and the herring upon these terms. It was admitted by the defendants that they sold the herring to the plaintiff, as claimed, and that they were delivered according to the agreement, and paid for by the plaintiff. The plaintiff, in January 1899, demanded three hundred drums of hake to be delivered in accordance with the alleged agreement, but the defendants refused to deliver them; and to recover damages for that alleged breach of contract, this action was brought.

The defendants denied that they agreed to sell any hake to the plaintiff. But the jury, under instructions to which no exceptions were taken, have found they did make such a contract. In this contingency, the defendants claim, that if any such contract of sale was made, it was oral merely, and being for more than thirty dollars, it was invalid under the statute of frauds. The case shows that no memorandum was made, and nothing was given in earnest to bind the bargain; and the defendants claim that no part of the goods sold were accepted and received by the purchaser, so as to bind the defendants to deliver the hake. This last proposition is controverted by the plaintiff, and hereon, as will be seen, the case hinges.

The presiding justice, among other things, instructed the jury that "if the contract for the hake and the contract for the herring were made *at the same interview,* even if the contract for the hake was finished and concluded before the contract for the herring was made, that even under those circumstances the delivery of the herring would take the sale of the hake out of the statute of frauds," and further, that "if the defendants agreed to sell the hake in controversy here to the plaintiff, and the plaintiff agreed to purchase them,—if their minds concurred in making such a contract, the plaintiff would be entitled to recover, regardless of the statute of frauds."

To these instructions, the defendants have excepted. It will be observed that the presiding justice in both instructions virtually withdrew from the jury the consideration of any facts upon which

the defense of the statute of frauds was based. In the latter instruction he did so expressly. He placed the right of the plaintiff to recover solely upon the determination of the question whether there was in fact an agreement of sale between the parties, whether their minds met. But in the former instruction he no less withdrew from the jury the consideration of the statute of frauds, for he instructed the jury that the delivery of the herring, a fact not in dispute, would take the sale of the hake out of the statute "if the contract for the hake and the contract for the herring were made *at the same interview*," a fact likewise not in dispute, if any contract was made for the hake. That is, the defendants, by their bill of exceptions, do not show or claim that if any contract was in fact made for the hake, it was not made at the same interview in which the contract for the herring was made. That question does not appear to have been controverted. If it was, it was incumbent on the defendants to have made it appear so in their bill of exceptions. The only question, therefore, really passed upon by the jury under either instruction, or both combined, was whether the parties made a contract for the hake, and the jury found that they did.

The statute of frauds, R. S., chap. 111, § 4, provides that "no contract for the sale of goods, wares or merchandise, for thirty dollars or more, shall be valid, unless the purchaser accepts and receives part of the goods, or gives something in earnest to bind the bargain, or in part payment thereof, or some note or memorandum thereof is made and signed by the party to be charged thereby, or by his agent." The contracts for the hake and the herring, regarding them now separately, were both executory contracts. One applied to three hundred drums of hake, with an option in the purchaser to take not exceeding five hundred drums, to be delivered when called for; the other applied to ten barrels of herring, to be delivered by next boat, within one week. But the statute of frauds is as well applicable to executory contracts as to executed. *Edwards* v. *Grand Trunk Railway*, 48 Maine, 379; *Carman* v. *Smick*, 3 Green, N. J. L. 252; *Gilman* v. *Hill*, 36 N. H. 311.

The plaintiff, however, contends that the contracts for the hake

and the herring constituted in fact but one entire contract for hake and herring, and that his acceptance and receipt of the herring, a part of the merchandise contracted for, took the sale out of the statute, as to the whole. The defendants admit the "delivery" of the herring, and we understand from that admission, that they also admit that the herring were accepted and received by the plaintiff. The phrase "delivered by the seller" is frequently used in such cases in the sense of "accepted and received by the purchaser," and not unnaturally, for a receipt by the purchaser necessarily presupposes a delivery by the seller. This is not entirely accurate, however, for the statute makes acceptance and receipt by the purchaser the test of the removal of the statutory bar.

Now if there were two separate contracts of sale, one for the herring and one for the hake, it is clear that the acceptance and receipt of the herring did not take the contract for the hake out of the statute, for an acceptance under one contract cannot make another contract valid. But if there was in fact only one contract, for both herring and hake, negotiated for, it may be successively, a delivery followed by an acceptance and receipt of the herring did take the hake out of the statute. It is unquestionably the law, in such case, that an acceptance and receipt of part of the articles purchased, or of all of one class of articles purchased, necessarily takes the whole contract out of the statue. *Elliott* v. *Thomas*, 3 M. & W. 170. So that if the contract in this case was single and entire, it was proper for the presiding justice to rule that the delivery of the herring took the hake out of the statute. For, although the question whether there is an acceptance and receipt under the contract is ordinarily for the jury, yet, in this case, the admission that the herring was so accepted carried with it necessarily the contract as to the hake, provided only that it was a single contract. There was nothing left on this point for the jury to decide. But this conclusion follows only upon the assumption that there was but a single contract. The application of the statute of frauds, in case of the purchase of a number of articles at the same transaction, may depend upon whether there is one contract or more. The mere fact that a separate price is agreed upon

for each article, or even that each article is laid aside as purchased, makes no difference so long as the different purchases are so connected in time or place, or in the conduct of the parties, that the whole may be fairly considered as one transaction. Brown on the Statute of Frauds, § 314; *Baldey* v. *Parker*, 2 B. & C. 37; *Scott* v. *Eastern Counties Railway Co.*, 12 M. & W. 33. Such is the common case of a number of articles purchased at private sale, of a shopman for instance, at the same time, though at separate prices. Brown on the Statute of Frauds, §§ 335, 336. The same doctrine was applied in a case where the parties made bargains for the purchase and sale of several lots of timber, at different places, some miles apart, the bargains being made at the different places and at separate prices, but all on the same day. *Biggs* v. *Whisking*, 14 C. B. 195. Such purchases may be regarded as entire, though composed of separate parts. But whether such negotiations for separate articles result in one entire contract for the whole, or whether the contract for each remains separate and distinct, may depend upon many circumstances. It raises a question of fact properly to be passed upon by a jury. Were the transactions near in time or place, or similar in circumstances? What was the conduct of the parties? Was the seller a merchant engaged in the regular course of his business in his shop or store? What was the language used? What are the proper inferences to be drawn as to the intention of the parties? The answers to these and other like questions solve the problem. If the circumstances are such as to lead to a reasonable supposition that the parties intended that the whole series of transactions should constitute one trade, they may be regarded as one entire contract; otherwise, not.

Now, in the case at bar, the jury were instructed, in effect, that if the two contracts for sale were made at the same interview, that would be sufficient. We think this ruling was erroneous. Even if there were no other facts or circumstances to be considered, which is hardly supposable, it cannot be said as a matter of law that the mere fact that the negotiations for the herring and the hake were made at the same interview resulted in a single contract. They may have constituted one contract only, and they

may not. If not, then the hake were not taken out of the statute
by the acceptance of the herring. Whether the negotiations con-
stituted one contract or more, was a question of fact, and should
have been submitted to the jury.

*Exceptions sustained.*