TER KEURST *v.* FIRST STATE BANK.

1. CONTRACTS—INTENT—FRAUDS, STATUTE OF.

   Intent of the parties is controlling as to whether oral agreement of bank to repurchase three bonds it had sold to a customer was one entire contract for repurchase of two for cash and the third within a year, or, two separate contracts (2 Comp. Laws 1929, § 9443).

2. FRAUDS, STATUTE OF—PARTIAL PERFORMANCE—REPURCHASE OF BONDS.

   Bank's oral agreement to repurchase a bond within a year *held*, part of one entire contract entered into for purpose of avoiding threatened litigation by customer owning three bonds and, since partially performed by acceptance and payment for two bonds, was not within the statute of frauds (2 Comp. Laws 1929, § 9443).

3. SAME—PERFORMANCE WITHIN A YEAR.

   An oral contract of bank to repurchase a bond within a year is capable of full completion within a year and, even though the parties may have intended that it would extend over a year and did so extend as a matter of fact, it is not within the statute of frauds (3 Comp. Laws 1929, § 13417).

4. BANKS AND BANKING—COMPROMISE AND SETTLEMENT—ULTRA VIRES—REPURCHASE OF BONDS.

   Bank's oral agreement to repurchase two bonds for cash and third bond within a year, an isolated transaction entered into for the sole purpose of settling threatened litigation, *held*, within its implied powers and not *ultra vires*.

Appeal from Ottawa; Hawley (Royal A.), J., presiding.   Submitted January 16, 1935.   (Docket No. 100, Calendar No. 38,147.)   Decided April 8, 1935.   Rehearing denied May 17, 1935.

Bill by Arthur J. Ter Keurst against First State Bank and others to recover the purchase price of a

bond. Transferred to law side of court. Judgment for defendants. Plaintiff appeals. Reversed and remanded.

*Miles & Smith,* for plaintiff.

*Paul E. Cholette* (*Harry S. Toy,* Attorney General, of counsel on rehearing), for defendants.

Butzel, J. On November 9, 1929, plaintiff Arthur J. Ter Keurst purchased a Continental Mortgage bond of the par value of $1,000 and an American Home Mortgage bond in like amount from the First State Bank of Holland. On the 9th of June, 1930, he purchased a $1,000 Central Securities Company bond from the bank. His dealings were with Wynand Wichers, then cashier of the bank. In April, 1931, plaintiff threatened suit against the bank, claiming that the bonds had been guaranteed and false representations made in their sale. The bank had sold a large number of other bonds of similar nature, and in order to avoid a deluge of litigation by other bondholders and consequent undesirable reflection on the bank, Mr. Wichers, with the consent of members of the discount committee, agreed to repurchase the three bonds. The American Home Mortgage and the Central Securities Company bonds were to be delivered at once upon payment of $2,000, but the bank was to have at least a year in which to take up the Continental Mortgage bond, in order. that its market value might be determined and the difference settled in cash. The nature of the agreement is shown by the testimony of defendant Wichers, as follows:

"*Q.* Did you at that one time promise to pay him for all three of the bonds? * * *
"*A.* Yes.

"*Q.* What arrangement did you make at that time?

"*A.* The arrangement was this, that we agreed to pick up the two bonds at once and that was done and then the other bond was to be picked up at some later time when the value of the Continental bond was known, the idea being it could be disposed of then for its market value and the balance could be arranged between Mr. Ter Keurst and the bank."

The American and Central bonds were taken up and paid for at once, but the bank failed to purchase the Continental bond within the year, as agreed, and plaintiff thereupon brought suit in equity for specific performance of the contract, asking judgment for the amount of the bond. Although the bank, its conservator, and Wichers were joined as defendants, it is not contended that Mr. Wichers can be held on the transaction, the sole claim being made against the bank. The suit was transferred to the law side of the court, apparently on verbal pleadings. There is no showing that the $1,000 Continental Mortgage bond has been tendered to defendant bank, but the point has not been raised, and we shall limit ourselves exclusively to the questions raised on appeal.

The trial court found that the agreement to purchase the first two bonds for cash and the third bond within a year constituted two separate and distinct contracts; and that the delivery and acceptance of the first two bonds therefore did not affect the contract as to the third bond, which, not being in writing, was accordingly invalid under the statute of frauds, 2 Comp. Laws 1929, § 9443. Judgment was directed in favor of defendants.

Section 9443, 2 Comp. Laws 1929, provides as follows:

"A contract to sell or a sale of any goods or choses in action of the value of one hundred dollars or upwards shall not be enforceable by action, unless the buyer shall accept part of the goods or choses in action so contracted to be sold or sold, and actually receive the same, or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged, or his agent in that behalf."

If the instant transaction constituted a single, entire contract for the purchase of all three bonds, as claimed by plaintiff, the acceptance and payment of the first two bonds by defendant constituted such part performance as to take the case out of the statute of frauds. On the other hand, if there were two separate and distinct contracts, as contended by defendant, the acceptance of the first two bonds could not affect the agreement to purchase the Continental Mortgage bond. The rule is well stated in *Weeks* v. *Crie,* 94 Me. 458, 463 (48 Atl. 107, 80 Am. St. Rep. 410):

"The application of the statute of frauds, in case of the purchase of a number of articles at the same transaction, may depend upon whether there is one contract or more. The mere fact that a separate price is agreed upon for each article, or even that each article is laid aside as purchased, makes no difference so long as the different purchases are so connected in time or place, or in the conduct of the parties, that the whole may be fairly considered as one transaction. * * * Such purchases may be regarded as entire, though composed of separate parts. But whether such negotiations for separate articles result in one entire contract for the whole, or whether the contract for each remains separate and distinct, may depend upon many circumstances. It raises a question of fact properly to be passed

upon by a jury. Were the transactions near in time or place, or similar in circumstances? What was the conduct of the parties? Was the seller a merchant engaged in the regular course of his business in his shop or store? What was the language used? What are the proper inferences to be drawn as to the intention of the parties? The answers to these and other like 'questions solve the problem. If the circumstances are such as to lead to a reasonable supposition that the parties intended that the whole series of transactions should constitute one trade, they may be regarded as one entire contract; otherwise, not.''

The intent of the parties is controlling. This is not a case in which two distinct verbal orders were given for the purchase of personal property, one for immediate delivery and the other to be sent in the future, as in *Brown* v. *Snider,* 126 Mich. 198, and *S. L. Munson Co.* v. *DeVries,* 220 Mich. 53, relied on by defendants. An examination of the facts which induced the execution of the contract shows that the parties intended to make one entire contract for the purchase of all three bonds. Plaintiff threatened suit unless all three were repurchased. The bank feared the consequences of the threatened litigation, and its agreement to repurchase was motivated solely by its desire to avoid all litigation. This purpose could not have been served by only the purchase of the first two bonds. An action subsequently brought by plaintiff on the remaining bond would have wiped out the entire consideration which induced the bank to enter into the agreement. We therefore believe that there was but one entire contract, which was partially performed by the immediate acceptance of the first two bonds, and the agreement as to the repurchase of the Continental Mortgage bond was therefore not within the statute of frauds.

Defendants, however, claim that inasmuch as the bank had an entire year in which to purchase the remaining bond, the agreement was one not to be fully performed within one year from the making thereof, and was therefore void under the statute of frauds, 3 Comp. Laws 1929, § 13417. There is no merit to this contention. Although the bank was to have at least a year in which to take up the third bond, there was nothing in the agreement to prevent it from taking up the bond at an earlier date if it saw fit. The contract therefore could be fully completed within a year, and is not within the statute of frauds, even though the parties may have intended that it would extend over the period of a year, and although as a matter of fact it did so extend. *Smalley* v. *Mitchell,* 110 Mich. 650; *Epstean* v. *Mintz,* 226 Mich. 660; *Caplis* v. *Monroe,* 228 Mich. 586.

The further claim is made that the contract is *ultra vires* and that the bank had no right to bind itself to repurchase the bonds. This is not a case where a bank sold securities and guaranteed their payment, as in *Reichert* v. *Metropolitan Trust Co.,* 262 Mich. 123, but an isolated transaction entered into by the bank for the sole purpose of settling threatened litigation, and was within its implied powers. *Timm* v. *Grand Rapids Brewing Co.,* 160 Mich. 371 (27 L. R. A. [N. S.] 186).

The judgment of the lower court is reversed, with costs to plaintiff, and the case is remanded to the trial court for the purpose of entering judgment for plaintiff in the sum of $1,000, with costs, upon a proper tender of the bond being made.

Potter, C. J., and Nelson Sharpe, North, Fead, Wiest, Bushnell, and Edward M. Sharpe, JJ., concurred.