James Talcott, Inc., Appellant, vs. Cohen, Respondent.

*October 12, 1937—January 11, 1938.*

For the appellant there were briefs by *Larrabee & Larrabee* of Chippewa Falls, and oral argument by *Orrin H. Larrabee*.

*Samuel Goodsitt* of Ladysmith, for the respondent.

The following opinion was filed November 9, 1937:

WICKHEM, J. On June 6, 1933, the Hirschfeld Textile Corporation, through an agent, took an order for merchandise from defendant Cohen. This merchandise consisted of numerous items of wearing apparel, each separately listed in a printed order blank of the Hirschfeld Textile Corporation as to quantity, kind, and price. The order was not signed by Cohen. The blank contains what purports to be the agreement evidenced by the order and calls for delivery or deliveries on or between September 15 and October 15, 1933. Thereafter, shipments of different kinds and classes of merchandise were made directly from different mills, it appearing that the Hirschfeld Textile Corporation was a manufacturer's jobber, and that it sent shipping orders to the various manufacturers whose goods were ordered. These shipments were accepted by defendant, and with the exception of one item were paid for and are not involved here. On September 12, 1933, defendant sent a telegram to the Hirschfeld Textile Corporation which read, "Cancel case by 100% Roll Union Suits." This referred to an item in the order reading, "27/63 N 12 dozen 100% suits," and priced at $21.75 per dozen. On October 6, 1933, the Hirschfeld Textile Corporation shipped the twelve dozen union suits packed in a single carton. These were delivered to defendant's store, and the carton opened at some later time. The garments were not removed from the box, which was placed in the basement of defendant's store. None of them were sold or offered for sale. Shortly thereafter, defendant moved to another location, taking the carton with him, and on March 9th, the suits were destroyed by fire when defendant's com-

plete stock of goods burned. The suits were not included in an inventory taken by defendant on January 1, 1934, were not covered by fire insurance, and defendant did not collect from the fire insurance company on account of them.

Defendant contends that the contract of sale is void under the statute of frauds. Sec. 121.04 (1), Stats., provides as follows:

"A contract to sell or a sale of any goods or choses in action of the value of fifty dollars or upwards shall not be enforceable by action unless the buyer shall accept part of the goods or choses in action so contracted to be sold or sold, and actually receive the same, or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf."

It is urged by plaintiff that the contract was taken out of the statute because part of the goods were delivered to and accepted by the buyer. The case of *Gedanke v. Wisconsin Milk Co.* 215 Wis. 370, 254 N. W. 660, is cited in support of this contention. See also *New Richmond Roller Mills Co. v. Arnquist,* 170 Wis. 130, 174 N. W. 557; *Weeks v. Crie,* 94 Me. 458, 48 Atl. 107. Defendant claims that since the order was for a large number of distinct articles, separately listed and priced, the contract is severable and calls for as many sales as there are separate items. 2 Williston, Sales (2d ed.), p. 1283. In view of this, it is contended that the acceptance of several of the items ordered does not amount to such an acceptance of "part of the goods" as will take the contract out of the statute.

The question proposed is an interesting one, but is only material on the assumption that there was no acceptance of the twelve dozen union suits by the defendant. We are satisfied that there was such an acceptance of this item as to take the contract out of the statute of frauds. Hence, we express no opinion upon the contentions made.

Sec. 121.48, Stats., provides as follows:

"The buyer is deemed to have accepted the goods when he intimates to the seller that he has accepted them, or when the goods have been delivered to him, and he does any act in relation to them which is inconsistent with the ownership of the seller, or when, after the lapse of a reasonable time, he retains the goods without intimating to the seller that he has rejected them."

Sec. 121.50, Stats., provides as follows:

"Unless otherwise agreed, where goods are delivered to the buyer, and he refuses to accept them, having the right so to do, he is not bound to return them to the seller, but it is sufficient if he notified the seller that he refuses to accept them."

The goods in question were shipped October 6, 1933. The defendant reduced them to his possession and stored them in his basement as heretofore stated. He did not notify either the manufacturer or the textile corporation that he declined to accept the goods until February 27, 1934; in other words, there was a lapse of four months during which, so far as the record shows, there was no notification to the vendor that he rejected shipment. These were seasonable goods, and defendant's nonaction puts into operation that portion of sec. 121.48, Stats., which states that the buyer is deemed to have accepted the goods when after the lapse of a reasonable time he retains them without intimating to the seller that he has rejected them. It may be contended that the cancellation by defendant prior to the shipment sufficiently notified vendor that the goods were rejected and gave color to defendant's later inactivity. We think this contention cannot be sustained. A buyer may wrongfully or rightfully cancel an order and later accept the goods. The fact that he has canceled before the goods are shipped throws no light upon his purpose in later retaining possession without any notification to the seller that the goods are not accepted.

The statute prescribes the act that takes from retention the consequences of acceptance. It is notification while the goods are in his possession that he rejects them. It is true that the defendant was not obligated to return the goods if they were delivered under circumstances which gave him the right to reject them, but even in this situation sec. 121.50, Stats., which provides that he is not bound to return them to the seller, requires that he notify the seller that he has refused to accept them. The obvious purpose of this requirement is to bring the section into conformity with the provisions of sec. 121.48. We are of the opinion, (1) that defendant retained the goods for an unreasonable length of time without notifying the vendor that he had rejected them; (2) that under sec. 121.48 this constituted an acceptance of the goods; and (3) that, the goods having been delivered and accepted, the statute of frauds is satisfied and the contract enforceable.

It is also contended by plaintiff that the court erred in this case in failing to enter judgment for plaintiff in the sum of $90 for sweaters ordered, delivered, and accepted. It is not seriously contended that defendant does not owe this sum of money. On April 11th, defendant mailed plaintiff his check for $90. At this time there was a controversy with reference to the union suits, and defendant wrote upon his check, "Account paid in full," and "Bal. acc't in full for Hirschfeld Tex. Corp." The Hirschfeld Textile Corporation refused to accept the check, but did not return it. The right to refuse such a check is clear, and its delivery cannot be treated as a payment. Upon the trial, defendant's attorney stated that "defendant tenders the sum of $90 with interest, if any is due," but no money was offered or handed to the clerk. Plaintiff's attorney replied, "That tender is not accepted." The answer of the defendant had pleaded payment of the item of $90. Certainly the trial court was in error in dismissing plaintiff's complaint as to this item. The

most defendant would be entitled to, had there been a proper tender, would be to a remission of costs accruing after the tender. A valid tender would not discharge his liability for the principal sum of $90. In view of the fact that plaintiff is entitled to recover the purchase price of the union suits with costs, there is no occasion to determine the validity of defendant's tender. Plaintiff is entitled to judgment for the full amount demanded by its complaint.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment for the plaintiff in accordance with the demand of the complaint.

A motion for a rehearing was denied, with $25 costs, on January 11, 1938.