## WINCHELL v. MIXTER.

1. APPEAL AND ERROR—ACCOUNTING—TRUSTS—INJUNCTION.
   In suit for accounting, for appointment of a trustee to control property in which plaintiffs claim an interest and for injunction restraining defendants from disposing thereof, hearing by Supreme Court is *de novo*.

2. EQUITY—BURDEN OF PROOF—EVIDENCE—CONTRACT TO MAKE WILL.
   Bill for accounting, appointment of trustee to control property in which plaintiffs claim an interest and for injunction re-

Statute of frauds, contracts not to be performed within 1 year, see 1 Restatement, Contracts, § 198.

straining defendants from disposing thereof was improperly dismissed for failure of plaintiffs to sustain their burden of proof where plaintiffs' testimony in record is sufficient to uphold claim that their stepmother, one of the defendants, did make an agreement in settling estate of plaintiffs' father to leave them 5/7 of her entire estate upon her death.

3. SAME—FRAUD—EVIDENCE.

Bill of complaint for general and specific equitable relief was properly dismissed as to two of three defendants in suit by plaintiffs against their stepmother and her sister and nephew where there was no testimony that latter two were guilty of alleged fraud.

4. TRUSTS—CONSTRUCTIVE TRUST—CONTRACT TO MAKE WILL—SPECIFIC PERFORMANCE.

In suit by stepchildren of defendant widow to have a constructive trust declared and trustee appointed of personal property in which plaintiffs claim an interest, such relief is not permitted where no such control was contemplated at time plaintiffs' rights were created, the subsequent acts of such defendant do not justify depriving her of the possession, management and use of her own property, and such discretionary relief, in nature specific performance, is neither necessary nor equitable.

5. SPECIFIC PERFORMANCE—DISCRETION OF COURT.

Granting relief in the nature of specific performance is a matter of grace, not of right.

6. ACCOUNTING—POSSESSION OF PERSONAL PROPERTY.

Plaintiffs, claiming an interest in personal property of defendant stepmother and not being presently entitled to possession or control of such property, are not entitled to an accounting thereof, especially where such defendant was entitled to appropriate to her own use so much of such property as was reasonably necessary for her proper maintenance and support.

7. FRAUDS, STATUTE OF—ORAL CONTRACT CAPABLE OF BEING PERFORMED WITHIN ONE YEAR—INTENT.

An oral contract that is capable of being performed within one year is not void under the statute of frauds even though the parties intended it should extend over a longer period (3 Comp. Laws 1929, § 13417).

8. WILLS—CONTRACTS—EVIDENCE—ENFORCEMENT.

The establishment of an alleged contract to make a will is a matter of proof and if established, enforcement is a matter of right.

9. SAME—NONFULFILLMENT OF CONTRACT TO MAKE WILL—EQUITY.

It is competent for a person to make a valid agreement binding himself to make a particular disposition of his property by will, the nonfulfillment of which contract by the proffering testator being a fraud which equity will not allow.

10. SAME—CONTRACTS—REVOCATION.

Will of testator who has contracted upon a good consideration to make a particular disposition of his property is not ambulatory and revocable during the testator's lifetime, the obligation not to revoke or change the will, although negative, being as much involved in such contract as the affirmative duty to devise in a certain way.

11. SAME—CONTRACTS—CONSIDERATION.

Adequate consideration to leave plaintiffs 5/7 of stepmother's entire estate upon her death was given her by agreement of plaintiffs, testator's children, to give her absolute ownership of approximately half of testator's estate instead of merely a life use thereof, her right to use principal of such half being permitted if necessary for her support.

12. SAME — CONTRACTS — CONSIDERATION — LIFE ESTATE — ABSOLUTE OWNERSHIP.

Since the absolute ownership of an interest in an estate is clearly more valuable than the life use of such an interest, the recipient of such additional interest received a valuable consideration for a contract to make a particular testamentary disposition of her own estate.

13. SAME—CONTRACTS—SUBJECT-MATTER—ADMISSIONS—EVIDENCE.

That there was a present existence of the subject-matter of an alleged contract by defendant to leave a portion of her estate to plaintiffs by will, *held*, admitted as well as established by competent proof.

14. INJUNCTION—CONTRACT TO MAKE WILL—DISPOSAL OF ESTATE.

In suit to restrain conveyance of property, except as necessary to use for support of elderly defendant, stepmother of plaintiffs, latter were shown to have fully performed their agreement to give her a more valuable interest in their father's estate than he had given her in return for an agreement to leave them 5/7 of her estate at her death and where she executed a will but thereafter changed it and other defendants who had custody of her property were unwilling to disclose its extent, plaintiffs were entitled to injunctive relief restraining disposal of her property in excess of 5/7 of the value of her estate at time original agreement was made; otherwise plaintiffs would be without adequate remedy.

15. EQUITY—JURISDICTION—PREVENTION OF FRAUD—CONTRACT TO MAKE WILL.

Jurisdiction in equity extends to the prevention of fraudulent conduct of a defendant where plaintiffs have fully performed their part of contract and defendant who had agreed to leave them a specified interest in her estate has revoked will whereby such performance would have been effected.

16. SAME—DETERMINATION OF ALL PERTINENT ISSUES.

Once equity takes jurisdiction it will determine all pertinent issues.

17. SAME—NATURE OF RELIEF.

Courts of equity are not bound to give any stereotyped form of relief but may readily adapt the relief to the peculiar facts of the case in order to effectuate justice.

18. WILLS—CONTRACTS—PROPERTY—TITLE—POSSESSION.

Title and ownership of property which was given to defendant widow pursuant to her agreement with her plaintiff stepchildren that she have the absolute ownership to one-half their father's estate instead of a mere life use thereof in return for her agreement to leave such stepchildren 5/7 of her entire estate by will, is decreed to be in such stepchildren subject to her right to possess, manage and control it during her lifetime and use so much as may be necessary for her proper maintenance and support, with plaintiffs' right to possession deferred until the death of defendant widow.

19. COSTS—FAILURE OF EITHER PARTY TO PREVAIL IN FULL.

No costs are awarded on appeal in suit for equitable relief where decree dismissing bill is vacated but neither plaintiffs nor principal defendant have fully prevailed.

Appeal from Ottawa; Verdier (Leonard D.), J., presiding. Submitted October 17, 1946. (Docket No. 18, Calendar No. 43,463.) Decided December 2, 1946.

Bill by Roy Winchell and another against Frank Mixter and others for an accounting of all property received under a contract and for appointment of trustee. Decree for defendants. Plaintiffs appeal. Reversed and decree ordered entered in this Court.

*Charles E. Misner,* for plaintiffs.

*Alexis J. Rogoski,* for defendants.

NORTH, J.  By their suit plaintiffs sought to have
a constructive trust in their behalf decreed in prop-
erty hereinafter designated.  After proofs in open
court, the circuit judge held plaintiffs had not estab-
lished their right to relief, particularly ''that plain-
tiffs have failed to sustain the burden which rested
upon them to establish the contract alleged in their
bill of complaint.''  A decree dismissing the bill of
complaint was entered and plaintiffs have appealed.

W. Dorwin Winchell, a resident of Tuscola county,
died testate in October, 1911, leaving an estate of
a value between $10,000 and $11,000.  There sur-
vived him two children born of his first marriage,
Martha Misner and Roy Winchell, and the defend-
ant, Sarah Winchell, a widow by virtue of a second
marriage.  In his will the testator provided that
during her natural life and as long as she remained
a widow, Sarah M. Winchell should have the use of
one-half of deceased's estate, both real and per-
sonal; and further, the following: ''And as much
of the principal of such one-half of my property as
may be necessary for the support and comfort of
my said wife.''  The balance of the estate was left
in equal shares to the two children of the first mar-
riage.  The will was probated in the probate court
of Tuscola county.  The order assigning the residue
of the Winchell estate, dated July 23, 1912, made
the following disposition of the estate:

''It is ordered, that such residue of personal estate
and real estate (after payment of debts, funeral
charges, expenses of administration, et cetera) of
which said deceased died seized, be and the same is
hereby assigned to the said named legatees accord-

ing to law, as provided by the terms of the will of W. Dorwin Winchell, deceased, to each the following part or proportion thereof, to-wit: To said named Sarah M. Winchell, a life estate in one-half of said residue of real and personal estate.

"To said named Roy S. Winchell and Martha E. Misner, each, a one-half portion of said residue of real and personal estate, subject to the life estate of said named Sarah M. Winchell."

On July 30, 1912, the three parties interested in the distribution of the estate met in the probate court and in the presence of the probate judge and of the wife of Roy Winchell had a conference as to the manner in which the estate should be divided between the beneficiaries. There was a very friendly relation between Martha Misner and Roy Winchell and their stepmother, Sarah Winchell; and the record fairly discloses that Martha and Roy were not adverse to giving their stepmother a somewhat more liberal division of the property than was provided in the will or in the order of distribution, which did not literally conform to the terms of the will. In an effort to arrive at the desired result consideration was given to the fact that Sarah Winchell had some property in her own right, and that the amount of that property as compared with the amount of the property which it was being planned should go to her from her husband's estate, was as two-sevenths to five-sevenths. Plaintiffs claim an oral agreement was finally reached and a division made accordingly whereby Sarah Winchell received as the absolute owner approximately one-half of the Winchell estate, all of that one-half being personal property. The remaining one-half was divided equally between testator's two children. But it is the claim of plaintiffs that the division of the property above noted was made in consequence of a simultaneous agreement

between the three parties that Sarah Winchell should make a will by the terms of which five-sevenths of the estate she possessed at the time of her death would be left to Martha Misner and Roy Winchell.

On the day in question Sarah Winchell did execute a will prepared by the Tuscola county probate judge which, according to testimony in behalf of plaintiffs, conformed to the agreement of the parties as above outlined; and the will so executed was left in the custody of the probate judge until some time in 1919. On the 9th day of August, 1919, Sarah Winchell executed another will in which she provided: "I hereby revoke all former wills by me at any time made." This latter will was witnessed by the Tuscola county probate judge and was left in his custody. The 1919 will provided for a disposition of the testatrix's estate which was very different and less favorable to the two stepchildren than was made by the 1912 will. Again in the spring of 1944, Sarah Winchell made another will which at the time of the trial was in the custody of defendant Frank Mixter, but the terms of this 1944 will are not disclosed by the testimony. The 1912 will has entirely disappeared.

In September or October, 1944, Sarah Winchell, who was then nearly 80 years of age, visited her stepdaughter, Martha Misner; and while there Mrs. Misner was informed by her stepmother that she had executed another will in the spring of 1944, and that its terms were contrary to the alleged agreement made in the office of the probate judge, July 30, 1912. Thereupon Sarah Winchell signed a communication in the form of a letter addressed to defendant Frank Mixter, a nephew of Sarah Winchell, who is the son of Sarah's sister, defendant Emma Mixter. This letter which was delivered

by Martha Misner and Roy Winchell to Frank Mixter, who is an attorney in Detroit, in part read as follows:

"This will authorize you to surrender to (Martha) Elma Misner or Roy Winchell, either or both, all papers of any kind or description, including will or wills, * * * and any and all papers belonging to me of any kind or description and all personal property in your possession or held in trust by you for me."

Frank Mixter declined to comply with the terms of the letter addressed to him because, as he explained in his testimony, he had been directed by Sarah Winchell to retain in his possession the items referred to in the letter. However in response to a request written to him in January, 1945, by Sarah Winchell, Frank Mixter came to the home of Mrs. Misner in Grand Haven where Sarah Winchell was then staying. At his request Frank Mixter had a private interview with Sarah Winchell which, according to Mixter's testimony, resulted in Sarah Winchell saying in the presence of Mrs. Misner that she desired Frank Mixter to continue to retain the custody of such papers and properties belonging to her as he then had.

It is a fair inference from the record that shortly after the last above noted occurrence Sarah Winchell returned to Highland Park, Michigan, where she resided with her sister, Emma Mixter. The bill of complaint was filed May 1, 1945. It charges that defendant Sarah Winchell violated the alleged agreement of July 30, 1912, by withdrawing the will which she deposited on that date with the probate judge of Tuscola county and by executing the subsequent will in 1919; and further that defendants Frank Mixter and Emma Mixter "through fraud, deceit and misrepresentations have secured posses-

sion and control of all the property owned by defendant, Sarah Winchell. Such property includes the property or its equivalent obtained by virtue of the agreement of July 30, 1912.'' The prayer of the bill is for an accounting on the part of defendants, that a trustee be appointed to have control and management ''of the property found to belong to these plaintiffs by virtue of the will of decedent, W. Dorwin Winchell,'' and that an injunction issue restraining defendants from disposing of any of such property or the proceeds received therefor except that ''said Sarah Winchell may have the use of such property necessary for her proper maintenance and support.'' There is also a prayer for general relief.

We hear this case *de novo;* and our review requires determination of whether the trial court was correct in dismissing the bill of complaint or whether, on the other hand, plaintiffs are entitled to have a constructive trust decreed as prayed or in lieu thereof some other equitable relief within the scope of the pleadings which will protect plaintiffs in their alleged rights. The issues are presented by the separate answers filed by the respective defendants in each of which plaintiffs' right to relief is denied and dismissal of the bill of complaint prayed. In her answer Sarah Winchell admits that she did execute a will and that it was ''filed in the probate court for the county of Tuscola on or about July 30, 1912, but denies that said will was in consequence of any agreement between the plaintiffs and this defendant, or between this defendant and anyone else. Further    *    *    *    this defendant denies that she ever agreed to leave said will so deposited as above mentioned for any definite period of time. *    *    *    Answering paragraph 8, this defendant admits that she is the owner of property, but

whether the same is of greater or lesser value than July 30, 1912, she is unable to state.'' The answers of the other two defendants allege they have no knowledge of the alleged transaction between plaintiffs and Sarah Winchell on July 30, 1912; and specifically deny the fraud, deceit, misrepresentations, et cetera, charged against them in the bill of complaint.

Seemingly the primary issue presented on this appeal is whether the July 30, 1912, transactions were consummated and the agreement made between the stepchildren and Sarah Winchell. In other words, whether the trial judge was correct in his holding ''that plaintiffs have failed to sustain the burden which rested upon them to establish the contract alleged in their bill of complaint.'' Without reviewing the testimony contained in the record in detail, we deem it sufficient to note Mrs. Misner testified repeatedly that the agreement as to Sarah Winchell making a will and the division of the property of the W. Dorwin Winchell estate which had been assigned to Mrs. Misner, Roy Winchell and Sarah Winchell by the order of the probate court dated July 23, 1912, was as outlined in the above statement of plaintiffs' claim. On this phase of the record we quote but briefly from Mrs. Misner's testimony:

''We said we would release our rights to the half of my father's estate so that my mother (Sarah Winchell) would have absolute right to this property, not the use of it, but the right to the property, in consideration for her making a will giving us back at her death anything that remained of our father's estate. * * *

''Whatever property remained of mother's estate at her death, of every property she was possessed of at her death, entire property which she got from her people and from my father, the entire property, we were to have 5/7 of that.''

And in a general way, though not in all details, the testimony of Mrs. Misner was corroborated by that of Mary Winchell, the widow of Roy Winchell, who died after suit was instituted but before the case was heard. Mary Winchell as the executrix of Roy's estate was substituted as a party plaintiff herein. Further, the testimony in the above respects in very material aspects is corroborated by written documents made at the time of the July 30, 1912, agreement. The testimony of defendant Sarah Winchell, who was approximately 80 years of age at the time of the trial, was merely that she had no recollection of any of the material aspects of the alleged agreement whatever. Under such a record we are constrained to hold that the trial judge was in error in holding that plaintiffs in the respect under consideration had failed to sustain the burden of proof. The bill of complaint should not have been dismissed on that ground.

However, there was no testimony whatever in support of the charge that defendants Frank Mixter and Emma Mixter were guilty of any fraud, deceit or misrepresentations in the respect alleged in the bill, and therefore in so far as those defendants were so charged the bill of complaint was properly dismissed.

The foregoing brings us to the question of whether under the circumstances of this case plaintiffs are entitled to any equitable relief within the scope of the pleadings. First, should a constructive trust be created as prayed by plaintiffs? We think plaintiffs are not entitled to have such a trust decreed and a trustee appointed. No such control of the property of Sarah Winchell was contemplated at the time the 1912 agreement was made and on which plaintiffs now rely for relief. Nor do we find that any of the subsequent acts on the part of Sarah Winchell, of which plaintiffs complain, equitably

justify depriving her of the possession, management and use of her own property. Further, to create a constructive trust would doubtless lead to continuous judicial supervision of the administration of the trust as well as the expense of the trusteeship. Clearly the purpose and effect of creating such a trust in behalf of plaintiffs would be to accomplish the specific performance of the July 30, 1912, agreement. Granting relief in the nature of specific performance is a matter of grace, not of right. In our judgment it is not essential, nor would it be equitable under the circumstances of the instant case to decree a constructive trust. Plaintiffs have not brought to our attention any case involving comparable circumstances wherein a constructive trust was decreed. For the reasons indicated we decline to decree a constructive trust and the appointment of a trustee as prayed by plaintiffs.

Nor, under the circumstances of the instant case, are plaintiffs at this time entitled to an accounting from any of defendants. This is true for the reason that plaintiffs are not entitled to the possession or control of the property of Sarah Winchell, some or all of which now is in the possession of defendant Frank Mixter, until the death of Sarah Winchell; and the further fact that in the meantime under the terms of the contract made in 1912 Sarah Winchell is not only entitled during her lifetime to the possession, management and enjoyment of the property which she received under the 1912 contract but she is also entitled to appropriate to her own use so much of such property as may be reasonably necessary for her proper maintenance and support.

But in our judgment it does not follow under the pleadings and proofs in the instant case that plaintiffs are not entitled to the equitable relief hereinafter indicated. Such relief may be granted in the light of the following propositions of law.

If by the terms of a contract, it is capable of being performed within one year, it is not void under the statute of frauds * though the parties intended it should extend over a longer period. *Epstean* v. *Mintz,* 226 Mich. 660; *Ter Keurst* v. *First State Bank,* 271 Mich. 259.

"Establishment of the alleged contract is a matter of proof. Its enforcement, if established, is a matter of right. * * * A court of equity may decree specific performance of a contract to make a will. (Citing numerous authorities.)" *Burgess* v. *Jackson Circuit Judge,* 249 Mich. 558, 563.

"There is no doubt but it is competent for a person to make a valid agreement·binding himself to make a particular disposition of his property by last will and testament. (Citing numerous authorities.) * * * The nonfulfillment of this contract upon the part of Ann Carmichael would be a fraud which equity would not allow." *Carmichael* v. *Carmichael,* 72 Mich. 76, 85 (1 L. R. A. 596, 16 Am. St. Rep. 528).

To like effect, see *Bird* v. *Pope,* 73 Mich. 483.

"It was expressly held in *Carmichael* v. *Carmichael,* 72 Mich. 76 (1 L. R. A. 596, 16 Am. St. Rep. 528), that a person may enter into a valid agreement by parol, binding himself to make a particular testamentary disposition of his property." *Wright* v. *Wright,* 99 Mich. 170, 177 (23 L. R. A. 196).

In *Adams* v. *Swift,* 169 App. Div. 802 (155 N. Y. Supp. 873), the following is quoted with approval from *Mutual Life Ins. Co.* v. *Holloday,* 13 Abb. N. C. (N. Y.) 16; and we note that the factual background of the New York case is very much in the same field as that of the instant case.

---

* See 3 Comp. Laws 1929, § 13417 (Stat. Ann. § 26.922).—RE-PORTER.

"If the agreement (to make a will) was valid in law and in equity, it would be a mockery of justice to say that, having executed the will, she (testatrix) fully satisfied her part of the agreement, and was at liberty to revoke it the next day. The right secured by her husband (to have the property left to him on the death of testatrix) was substantial, and could not be defeated by another will. The spirit and true intent of the agreement, under which she became seised of and enjoyed the estate, obliged Mrs. Holloday (the testatrix) to adhere thereafter to the terms of the devise in her husband's favor. * * * If one of the contracting parties induces the other so to act that, if the contract be abandoned, he cannot be restored to his former position, the contract must be considered as perfected in equity, and a refusal to complete it is in the nature of a fraud. * * * To defeat this conclusion, it cannot be insisted that a will is in its own nature ambulatory and revocable during the lifetime of the testator. This statement, true in itself, can have no application to a case where the testator has obligated himself by a valid agreement founded upon a good consideration, which is wholly inconsistent with the making of another will, by which he should attempt to devise the property, the subject of the agreement, to others than the person from whom the consideration proceeded, and to whom he was bound by the terms of the agreement to devise it. * * * The absolute right to dispose of property, as the testator may elect at any time during life, may be abridged or modified by express contract, as other rights often are. And the obligation not to revoke or change a will, although negative, is as much involved in the agreement as the affirmative duty to devise in a certain way."

As above indicated, we are not in accord with defendants' contention that the contract upon which plaintiffs rely was not established by competent proof. Nor do we agree with defendants that adequate consideration for the July 30, 1912, agreement

was not proven, that the agreement was not performed by plaintiff Martha Misner, and Roy Winchell, or that there is not "present existence of the subject-matter of the contract." There was adequate consideration in that the agreement between the parties resulted in Sarah Winchell becoming the absolute owner of one-half of the estate of her deceased husband, instead of having only the life estate therein under the terms of the will or the final order of distribution in the Tuscola county probate court. Clearly the absolute ownership was more valuable than a life estate, even though if occasion so required Sarah Winchell might use some of the body of the estate; and in this there was a valuable consideration for her agreement to make the testamentary disposition of her estate above outlined. In so far as their part of the contract was concerned, it was fully performed by Martha Misner and Roy Winchell when, incident to the 1912 agreement, they gave to their stepmother a more valuable interest than she otherwise would have received in the W. Dorwin Winchell estate. That was all the agreement required them to do. And in this connection it may be noted that the contract was actually performed, so far as possible at the time, by Sarah Winchell, in that she did make the contemplated will and did leave the will in the custody of the Tuscola county probate court. That, at the time of the trial, there was, to some extent at least, a "present existence of the subject-matter of the contract" or of property received in lieu thereof was not only admitted in the answer of Sarah Winchell, but was established by competent proof. The defendants are not entitled to prevail in consequence of any of the contentions above noted.

On the other hand, the record fully justifies the conclusion that by her course of conduct Sarah Winchell has breached her obligation under the 1912

agreement, and thereby has undertaken to fraudulently deprive plaintiffs of their contractual rights in the property involved. Such is the only reasonable conclusion to be drawn from her having withdrawn her 1912 will from the Tuscola county probate court, from the making of the 1919 will and the will of 1944, the position taken by Sarah Winchell in the instant case, and the unwillingness of defendants to disclose the extent of property possessed by Sarah Winchell or the provisions of her present will. Clearly, under such circumstances, plaintiffs are entitled in equity to the injunctive relief hereinafter granted. Otherwise plaintiffs herein will be deprived of their property rights and left without any adequate or effective remedy. That plaintiffs would be left without any adequate remedy except the same is decreed during the lifetime of Sarah Winchell is obvious because after her death plaintiffs herein could not testify to the matters equally within the knowledge of Sarah Winchell,[*] and the only other parties present at the time and having knowledge of the 1912 agreement were Roy Winchell and the probate judge of Tuscola county, both of whom died prior to the trial of the instant case.

Jurisdiction in equity extends to the prevention of fraudulent conduct of the character disclosed in the instant case, and the equity court will grant appropriate injunctive relief; and having taken jurisdiction will determine all pertinent issues submitted. In *VanCamp* v. *VanCamp*, 291 Mich. 688, we quoted with approval from the supreme court of Iowa (*Chantland* v. *Sherman*, 148 Iowa, 352 [125 N. W. 87]), the following:

"The situation is somewhat novel, but courts of equity are not bound to give any stereotyped form

---

[*] See 3 Comp. Laws 1929, § 14219 (Stat. Ann. § 27.914).—Reporter.

of relief. They readily adapt the relief to the peculiar facts of the case, and their sole concern is that the decree entered shall effectuate justice.''

From the record before us our conclusion is that plaintiffs are entitled to a decree in this Court which shall provide as follows:

(1)   The decree entered in the circuit court in chancery is vacated.

(2)   The bill of complaint is dismissed as to defendants Frank Mixter and Emma Mixter.

(3)   That the contract of July 30, 1912, whereby Sarah Winchell agreed to leave to Martha Misner and Roy Winchell five-sevenths of the estate of which she died seized is a valid and enforceable contract, subject as to the limitations of amount hereinafter provided.

(4)   That subject to Sarah Winchell's right to possess, manage and control the property of which she became possessed through the will of her deceased husband and her 1912 agreement with Martha Misner and Roy Winchell and subject to her further right to use so much of such property as may have been heretofore or may hereafter be reasonably necessary for her proper maintenance and support, the title and ownership of such property is decreed to be in plaintiffs herein, but with the right of possession deferred until the demise of Sarah Winchell; and the foregoing provision is made applicable to any property held by Sarah Winchell at the time of her demise into which the property so received by her in 1912 has been or may hereafter be converted either directly or indirectly. (As to this phase of the instant case, see *Hogan* v. *Hogan,* 187 Mich. 278).

(5)   Except to the extent that it may be reasonably necessary to provide for the proper maintenance and support of Sarah Winchell, she and her

agents, attorneys or other representatives are enjoined from disposing of any of the property designated in the next preceding paragraph by will, gift, conveyance or transfer of any kind unless there is received incident to any transfer or conveyance property of like value; and any will or gift, and any transfer or conveyance to either of the other two defendants in this case, heretofore or hereafter made by Sarah Winchell affecting any of the property mentioned in the next preceding paragraph is decreed to be null and void in so far as its terms contravene the said 1912 agreement.

(6) The decree will further provide that the provisions thereof shall not apply to any property of which Sarah Winchell is now or may hereafter be possessed in excess of an estate of which five-sevenths would be equal in value to the property received by Sarah Winchell either through the will of her deceased husband or the 1912 settlement agreement, the value of the property so received by her being hereby fixed as $5,298.

A decree may be entered in this Court in accordance with the foregoing; but since neither the plaintiffs nor the principal defendant Sarah Winchell have fully prevailed and since as to the other defendants their case has been presented by the same counsel and on the same brief as that of Sarah Winchell, no costs will be awarded.

BUTZEL, C. J., and CARR, BUSHNELL, SHARPE, BOYLES, REID, and DETHMERS, JJ., concurred.